HENRY HULLMAN AND OTHERS *v.* FREDERICK HONCOMP AND OTHERS.

The *legality of the election* of persons as trustees of a cemetery association, and their *right*, by virtue of such election, to exercise the powers and conduct the affairs of the association, are questions which cannot be judicially tested by bill in chancery, but fall appropriately within the jurisdiction of proceedings at law by *quo warranto.*

A *special and express trust* created by the appropriation of a lot of ground by a cemetery association, for the exclusive purpose of the burial of the dead of a certain religious society, and *the appropriation* of the *surplus means* of the association solely to pious and charitable uses, are *objects* which will be upheld, and the execution of the trust strictly enforced in a court of equity, upon the application of any member of the association, where there has been an abuse or perversion of such trust.

Where such association was not, either by its charter, or its articles of association, placed under the special authority, control or direction of such religious society, the fact that some of the members of the association made *special stipulations* with the bishop of the diocese, that in consideration of his blessing the cemetery and consecrating the burial grounds, the rules and usages of the church should be strictly observed, and the directions of the bishop and priests of the church, be followed as to what members of the church should be entitled to burial in the cemetery, do not legally constitute *conditions* in the *terms of the trust,* so as to restrict, or in any manner control the legal powers of the corporation.

THIS is a Bill in Chancery reserved in the District Court of Hamilton County, for decision here.

The bill was filed in the commercial court of Cincinnati in April, 1850, and represents that the German Catholic St. Peter's Cemetery Association of Cincinnati was constituted in January, 1843, for the purpose of providing a suitable place of burial for the German emigrants, their families and relatives of Cincinnati and its vicinity, who might be members of the Catholic church, and in accordance with the doctrine, discipline, usages and ceremonies of the same. And with a view to that object, a lot of land containing ten acres, in Hamilton county, was purchased and conveyed to George F. Eichenlaub, Charles Schultz, Christian Schwegmann and Simon Oehler, *in trust,* for the association, until the same could be incorporated.

That the association was incorporated in the month of March, 1843, and that in accordance with the act of incorporation, the members of the association adopted a constitution and by-laws, by which it was provided that the management of the property and affairs of the association should be committed to fifteen trustees, members of the association, to be elected annually on the 2d day of February ; and from this body the officers of the association were to be elected.

It is charged, that pursuant to the constitution, an election was held in February, 1850, at which time the complainants were elected trustees for the succeeding year, and as such, were entitled to be declared elected, and to receive their certificate of such election, and also entitled to receive the property and manage the affairs of the concern. But that the officers of the association refused to declare them elected, and on the contrary, combining with the board of trustees for 1849 and with defendants, declared the defendants in this cause, trustees duly elected.

That notwithstanding the complainants were not *declared* elected, they called upon the officers and trustees of 1849 and demanded possession of the property and books of the association ; but they were refused, and ever since defendants have usurped the offices of the association, and are now, contrary to law and

the constitution of the association, controlling the property and affairs of the corporation.

The complainants allege, that they have filed an information in the nature of quo warranto, and that the same is pending in the Supreme Court, in order to test their right to the office.

The complainants next claim, that after the organization of the society, and before the adoption of the constitution and by-laws, the committee of the association called upon the bishop of the Catholic diocese of Cincinnati, to bless and consecrate the burial ground according to the doctrine, discipline, usages and ceremonies of the Catholic church, before it could be used for burial purposes.

That the bishop, before he would bless it, stipulated with the committee in writing :

1st. That the rules of the Catholic church should always be faithfully observed in this, chiefly, that no one should be buried in the ground who had not been baptized, or who died out of the communion of the Catholic church, of which the bishop, or in his absence, the clergy of the German Catholic church, or churches, should be the judge.

2d. That no poor person should be denied a place therein, because his friends were unwilling to pay.

3d. That any money accruing from the ground should be expended for pious uses, and specifically for the relief of the German Catholic poor.

4th. That the remains of persons interred in the Catharine street burial ground might be removed and interred in the new ground.

This writing, they say, was signed by Eichenlaub, Schultz, Schwegmann and Oehler, committee as aforesaid.

That on the 25th August, 1846, after the ground was blessed, the trustees deeded the ground to the corporation.

The bill complains that the trustees managing the affairs of the association, have violated the constitution and by-laws; have violated the stipulation with the bishop, and in all respects defeated the trust:

1st. By admitting those to burial who died out of the communion of the Catholic church.

2d. By refusing to poor persons the right of burial.

3d. By expending the funds of the association in other than pious uses and relief of the poor.

For these reasons the bishop, on Sunday the 9th Sept. 1849, pronounced in the several German Catholic churches of Cincinnati an *interdict* against the further use of the said cemetery as a place of burial for members of the Catholic church.

That complainants are hereby (that is, by the interdict of the bishop) deprived of the use of the said cemetery and the benefit of its revenues.

For these reasons complainants believe the majority of the members of the association did, on 2d February 1850, elect them trustees for the ensuing year, so that the trust might be carried out and the *interdict* removed.

Complainants are afraid that before the quo warranto can be heard, the funds of the association will be squandered; the property wrongfully appropriated; and the ground so filled *with bodies inadmissible,* that even a judgment in favor of complainants admitting them into office will be barred of all good effects, the interdict continued, etc.

The bill prays that the defendants be restrained from the exercise of the offices of trustees of the association, until the quo warranto can be heard, and that they account for moneys received, and hand the same over with the books and papers of the association to complainants; that the trust created be required to be faithfully executed by preserving the burial ground for the exclusive purpose of the burial of Germans who are Catholics, and that the surplus means of the company to be appropriated to charitable and pious uses; that the bodies of persons not Catholics buried in the cemetery be removed; that the members admitted by the defendants and their associates, since the irregular election in February, 1850, be stricken from the list of the members of the association and excluded; and that the observance of the terms of the stipulation made with the bishop, with a view to the consecration of the ground, be strictly required, so that the interdict of the bishop may be removed.

The answer denies all the equities set up in the bill. It avers

the purchase of the land on the 25th January 1843, and that after the association was incorporated, they received a deed of the property.

So far from ever agreeing to the terms said to be agreed on with the bishop, they aver that no such agreement was ever made or authorized to be made by the association. On the contrary, the great object in purchasing the property was to have it entirely free from the control of the bishop and clergy, and for this purpose one of the articles of their constitution, article 30th, provides in order that " our reverend priests may not be importuned with temporal offices, the association shall never elect any of these reverend priests to any office that may have any relation to the concerns of this association." The same article further declares that the " members reserve to themselves to extend or limit the objects declared ; to alter or repeal or add to the articles ; and to act and to do whatever they may as free men think expedient to the welfare and object of this association." Then follows the provision about the priests.

The answer not only denies the making or authorizing any agreement to be made with the bishop as is claimed in the bill, but insists, that when the alleged agreement was made, there was no incorporated association in existence ; and that any agreement made, was of course not binding on the corporation.

But the answer denies that any of these stipulations have ever been violated.

The defendants deny ever burying any but Catholics in the ground—deny ever refusing burials to poor persons. They deny having appropriated any funds except for charitable purposes.

As to the election, they aver that complainants were not duly elected, and allege that the election was conducted in the same way and manner the elections had always been conducted, but that the complainants with the priests had, by an intrigue or trick, endeavored to elect complainants on an opposition ticket.

Since the bill was filed, the quo warranto case has been dismissed ; and divers elections have since been had by the members of the association, all of which have resulted, as is alleged,

16

in electing men into office who were opposed to the priests having any thing to do with the affairs of the association.

The case was submitted on bill, answer, replication, testimony, and arguments of counsel.

*Samuel M. Hart* and *J. B. Moorman,* for complainants.

*Fox, French, & Pendleton,* for defendants.

BARTLEY, J. The *legality of the election* of the complainants, as trustees of the German Catholic St. Peter's Cemetery Association of Cincinnati, at the election held by the association in February, 1850, and *the right* of the defendants to exercise the powers, and conduct the affairs of the association, cannot be judicially tested by bill in chancery, but such cause falls appropriately within the jurisdiction of proceedings at law by *quo warranto.*

A *special and express trust,* created by the appropriation of a lot of ground for the exclusive purpose of the burial of the dead of the German Catholics of Cincinnati and its vicinity, and *the appropriation* of the *surplus means* of the association solely to pious and charitable uses, are *objects* which will be upheld, and the execution of the trust strictly enforced in a court of equity, upon the application of any member of the association, where there has been an abuse or perversion of such trust. But the proof in this case does not show such a violation or abuse of the trust created as to justify the interference of a court of equity.

And the corporation was not, either by its charter or its articles of association, placed under *the special authority, control,* or *direction,* of the German Catholic Church of Cincinnati; and the *special stipulations* of the bishop of the Catholic diocese, with some of the members of the association, that, in consideration of his blessing the cemetery, and consecrating the burial grounds, the rules and usages of the church should be strictly observed, and the directions of the bishop, or the priests of the church, be followed as to what German Catholics should be entitled to burial in the cemetery, do not legally constitute *conditions* in the *terms of the trust,* so as to restrict, or in any manner control, the legal powers of the corporation.

*Bill in chancery dismissed.*