JOHN A. MACDONALD, ET AL., APPELLANTS, VS. E. G. REHRER, ET AL. APPELLEES.

1. A bill in equity, and an injunction issued thereon, is not the proper remedy where a municipal corporation has been organized, even though it is alleged that such organization was illegal, and that it was not so organized in conformity to the law.

2. When a franchise or an office is usurped an injunction will not lie to prevent such usurpation, even though the respondents have not entered upon the duties of their office. The remedy is at law, by *quo warranto*, to be invoked after entry into, or exercise of authority under and by virtue of their election or appointment.

Appeal from Circuit Court for Orange county.

The facts of the case are stated in the opinion.

*T. E. Wilson* for Appellants.

*Alex. St.-Clair Abrams* for Appellees.

The only adequate remedy the orators can have is in a court of equity. Otherwise to avail themselves of their defense to actions brought against them for taxes, a multiplicity of suits would arise. The doctrine that equity will take cognizance of a controversy in order to prevent a multiplicity of suits has received a most liberal construction by our greatest chancellors. In Brinkerhoff vs. Brown, 6 Johns. Ch., 166, Chancellor Kent declares that "the principle to be deduced from the cases cited is that a bill against several persons must relate to matters of the same nature and having a connection with each other, and in which all the defendants are more or less concerned, though their rights in respect to the general subject of the case may be distinct."

This case is approved in a later case, the chancellor saying, "it is a favorite object of this court to prevent a multiplicity of suits." Robinson vs. Smith, 3 Paige Ch., 222; s. c., 24 Am. Dec., 212, 215; see also Chase vs. Searles, 45 N. H., 519, in which the above is quoted with approval.

In Carlton vs. Newman, Sup. Ct. Me., August, 1885, (1 East. Rep., No. 10, p. 597,) the opinion by Virgin, J., contains a review of the leading cases on this question of multiplicity of suits.

The New York cases are approved in the above opinion, and the conclusions of the late learned Mr. Pomeroy are adopted as found in 1 Pom. Eq. Jur., §269.

In §245 of the same work the author classes the conditions that may exist from which a multiplicity of suits may arise, class third being stated in these words: "Where

a number of persons have separate and individual claims and rights of action against the same party, A., but all arise from some common source, are governed by the same legal rule and involving similar facts, and the whole matter might be settled in a single suit brought by all these persons involved as co-plaintiffs, or by one of the persons suing on behalf of the others, or even by one person suing by himself alone. The case of several owners of distinct parcels of land upon which the same illegal assessment of taxes has been laid, is one example of this class."

The rule is sometimes loosely laid down that an injunction will not·be granted to restrain parties from acting as public officers. But this is on the sole ground that there is an adequate remedy at law in testing the right to such office.

Clearly this rule does not apply when such remedy is not adequate, or when an injunction would prevent a multiplicity of suits. 3 Pom. Eq. Jur., §1345, and cases cited.

In this case a large number of suits must arise if the defendants are allowed to levy such illegal taxes in order for these plaintiffs to maintain their rights in the matter, which, by this bill, can be accomplished in a single suit.

If the doctrine that "avoiding a multiplicity of suits is good ground for equity jurisdiction" has any force in this court it would seem that this case falls within the rule. See 1 Pom. Eq. Jur., §260; Freeland vs. City, &c., 51 Barb., 415, 435, and other cases cited.

It might seem at first glance that there might be adequate relief by a proceeding in the nature of "*quo warranto*," but an analysis of the action shows that it will not lie in this case.

*Quo warranto* was an ancient remedy at common law against the usurper of an office to inquire by what author-

ity he exercised the right. 3 Bl. Com., 262 ; State vs. St. Louis, &c., Ins. Co., 8 Mo., 330.

This is now obsolete, but the substitute authorized by statute has in view the same general purpose. At common law it was the proper remedy where there was a corporate body *de facto* which assumed to act as a corporation but from some defect in its constitution or creation could not legally use the powers it affected to use. Boone on Corporations, §162, and cases cited.

The same doctrine obtains in this State. Robinson *et al.* vs. Jones *et al.*, 14 Fla., 256.

But in the case now before this court the claim of the orators is that there never existed any such corporation, even *de facto*, such as the defendants claim, and that the latter had merely threatened to exercise certain powers as such alleged officers.

Nothing in the bill recognizes any such corporation, either *de jure* or *de facto* ; on the contrary, it distinctly negatives the existence of any.

The authorities show conclusively and uniformly that *quo warranto* admits the existence of a corporation. The orators denied such existence.

Hence *quo warranto* was not open to them as a remedy, and if no relief can be had in a court of equity they are remediless.

That the doctrine is well settled that *quo warranto* will not lie against persons claiming office in a corporation when no corporation in fact exists. See Boone on Corporations, §163 ; State vs. Lehre, 7 Rich. Law, S. C., 234, 324 ; People vs. Thompson, 16 Wend., 655.

And particularly do we rely on Scrafford vs. Gladwin Supervisors, 41 Mich., 647, 652.

There is a clear vital distinction between the case of Robinson vs. Jones, 14 Fla., 256, upon which alone the appel-

lants rely, and the case at bar. In the former case the city of Jacksonville was conceded to be a municipal corporation *de jure ;* in the case at bar, we deny that there exists even *de facto* any such municipal corporation as the town of Eustis is alleged to be.

Injunction was the only remedy for the complainants in this State.

The statute authorizing the creation of municipal corporations limits the power to the inhabitants of *villages, towns* and *hamlets.* And to make even a *de facto* corporation two-thirds of the qualified electors within the territory to be incorporated must be present. It was never designed to allow twenty-five citizens scattered over fifteen square miles of territory to set up a municipality with power to tax property holders. This usurped power they threatened to use and the complainants sought to enjoin their so doing. There is no analogy between this case and the case of Robinson *et al.* vs. Jones *et al.* Complainants were entitled to relief from a menaced injury in the shape of taxation, and that relief was properly sought in a court of equity. Chap. 2047, Acts of 1875, McClellan's Digest, pp. 245, 246 ; 2 High on Injunctions, §1236, p. 809 ; 2 Dillon on Mun. Corp., §923.

*Quo warranto* is not the proper remedy. 2 Dillon on Mun. Corp., 923, 894.

MR. JUSTICE VAN VALKENBURGH delivered the opinion of the court :

E. G. Rehrer, George W. Bowen and others, complainants, residents and citizens of the county of Orange, brought their bill of complaint against John A. MacDonald, purporting to be the Mayor, and others purporting to be Aldermen or Councilmen, and other officers of the town of Eustis,

in the county of Orange, claiming that the said town of Eustis was not properly incorporated under the law. They ask a perpetual injunction against the defendants, enjoining them from performing any acts pertaining to the duties of such officers.

The statute under which the said town is claimed to be incorporated (McClellan's Digest, 245,) reads as follows:

" Section 1. It shall be lawful for the male inhabitants of any hamlet, village or town in this State, not less than twenty-five in number, who shall have the qualifications hereinafter prescribed, to establish for themselves a municipal government with corporate powers and privileges as hereinafter provided.

" Section 2. Whenever any community of persons shall desire to form a municipal corporation under the provisions of this act, they shall, for a period of not less than thirty days, cause to be published in some newspaper of the county, or by posting in three places of public resort in the immediate vicinage, a notice requiring all persons who are registered voters, residing within the proposed corporate limits, which shall be stated in this notice, to assemble at a certain time and place to select officers and organize a municipal government."

The fourth section of the same act provides, that on the assemblage at the time and place thus provided, the qualified electors present, being not less than two-thirds of those whom it is proposed to incorporate, shall elect a corporate name, and seal, and designate by metes and bounds the territorial limits of the corporation, and shall then proceed to elect the officers, &c.

The complainants charge that the notice published in the paper for the assemblance of the citizens to determine whether the town should be incorporated is not in accordance with the statute, in that eight of the signers

thereto were not inhabitants of the town of Eustis; that at the meeting thirty-one votes were cast, and that the limits of the corporation were fixed, embracing an area of about fifteen square miles, or some ten thousand acres of land, whereas there reside within the limits of the territory so proposed to be incorporated sixty voters, that there were not two-thirds of the electors resident in the territory present at such meeting, and, therefore, the proceedings were illegal and contrary to law. The complainants allege that they are residents of the territory proposed to be so incorporated, and that they cannot be benefited or given protection by any municipal government within the territory named. The complainant, Rehrer, resides two and a half miles from the town of Eustis ; Savage more than one mile from the town ; Bowen owns land three miles from the town, and Rehrer owns land three and a half miles from the town, all within the limits sought to be thus incorporated. They charge that the defendants have organized the corporation and intend to levy and collect taxes of and from complainants against their will and protest, and, therefore, pray a perpetual injunction. Subsequently, on application of the complainants, in May, 1884, an injuction was granted as against the defendants.

In June, 1884, the defendants, by their solicitor, filed a demurrer to the bill, alleging want of jurisdiction in a court of equity.

On the 17th of June the court overruled the demurrer, with leave to the defendants to answer.

From this judgment the defendants appealed to this court.

But a single question is presented by the pleadings, that is, have the complainants sought their remedy in the proper court? Can the question raised be reached by a

court of equity, or should they have proceeded in a court of law through the instrumentality of an information in the nature of a *quo warranto ?*

The bill shows the fact that the defendants were elected to the several offices of Mayor, Councilmen, Clerk and Marshal of the town of Eustis, at a meeting of certain citizens, held on the 29th day of December, 1883.

A temporary injunction was granted on the twenty-second day of May, 1884, consequently the officers were such *de facto* at that time. The counsel for appellees, in his argument, says that there is nothing in the bill that recognizes any such corporation either *de jure* or *de facto*. The bill names the several defendants upon the ground that they purport to be officers of the town of Eustis. It gives the notice for a public meeting required by the statute. It then alleges that the meeting was held pursuant to said notice, on the 29th December, 1883, at which thirty-one residents were present, "who thereupon proceeded to incorporate the town, and at the same meeting pretended to elect" the officers named as defendants. More than four months after this election the injunction order was granted on motion of the complainants. The affidavit of complainants upon which this order was granted by the court alleges that "they, the defendants, have been attempting to exercise authority as officers of the town of Eustis, greatly to the injury of the complainants, and pray that your honor would issue a temporary injunction restraining," &c. In High's Extraordinary Legal Remedies, sec. 619, it is said: " Where, however, the right to an office or franchise is the sole point in controversy the specific legal remedy afforded by proceedings in *quo warranto* is held to oust all equitable jurisdiction of the case. Thus, the legality of the election of trustees of an incorporated association, and their consequent right to exercise the functions pertaining

to their office, and to conduct the affairs of the corporation, will not be determined by bill in chancery, such a case being regarded as appropriately falling within the jurisdiction of the common law courts by proceedings in *quo warranto*. And since this remedy is applicable the moment an office or franchise is usurped, an injunction will not lie to prevent the usurpation, even though the respondent has not yet entered upon the office or assumed to exercise its functions. In such case the party aggrieved should wait until an actual usurpation has occurred, and then seek his remedy in *quo warranto*."

In the case of Updegraff *et al.* vs. Crans, 47 Pa. St., 103, the court held that " a bill in equity for an injunction to restrain borough officers from entering upon official duties, under an alleged illegal appointment of town council, will not lie, though they had not exercised or attempted to exercise the duties of their offices ; the remedy is at law, by *quo warranto*, to be invoked *after* entry into, or exercise of authority under their appointment." See also Hullman *et al.* vs. Honcomp, 5 Ohio St., 237 ; The People vs. Clark, 70 N. Y., 518.

It is said in High on Injunctions, §1235, " that courts of equity do not entertain jurisdiction over corporate elections for the purpose of determining questions pertaining to the right or title to corporate offices since such questions are properly cognizable only in courts of law, the appropriate remedy being by proceedings at law in the nature of a *quo warranto*. Nor is the fact that relief is claimed upon the ground of fraud sufficient to warrant a departure from the rule, or to justify a court in such case in granting relief by injunction." Again in §1261 the author says: " Equity is averse to interference by injunction with the formation of local governments or municipalities in accordance with law. And where proceedings are being had under the laws of a

State for the incorporation of a village, property owners within the proposed village limit will not be permitted to enjoin such organization because the territory in question does not contain the requisite population, or because complainants would thereby be subject to burdens of local government largely disproportionate to the benefits accruing therefrom, or upon the ground of informality in the proceedings." "And a bill for injunction cannot be maintained to have declared null and void proceedings for the incorporation of a village, under an act of the Legislature for the incorporation of villages, the appropriate remedy in such a case being by proceedings in the nature of a *quo warranto.*"

This court, however, in the case of Robinson vs. Jones, 14 Fla., 256, has settled this question. The court says: "Admitting these two facts, that the defendants are not duly incorporated as alleged, and that they are in the actual exercise of municipal corporate functions as the city of Jacksonville, have the plaintiffs the right to a perpetual injunction against them prohibiting the exercise of the right and franchise to be a municipal corporation? What was the rule before the code? What is the rule since its enactment? This complaint is against ' certain individuals for claiming to act as a corporation.' It is brought by other individuals who seek to enjoin the persons so claiming the right to act, and acting as a corporation from so acting upon the ground that they were never duly incorporated. Anterior to the code the remedy for this wrong was in a court of law, through the instrumentality of an information in the nature of a *quo warranto.* Such a case depending entirely upon the solution of a dry legal question, the proper and exclusive forum for its determination was a court of law. The process of injunction could not have been invoked even by the Attorney-General in behalf of

the State in such a case. 17 Ves., 491; 2 Kent's Com., 8th Ed., 347; 24 Ala., 401; 22 Iowa, 75. Says Chancellor Kent: 'This remedy must be pursued at law, and there only.' It is unnecessary to say anything more as to the remedy."

The code in this State has long since been legislated out of existence, and the law is as above laid down by this court, as it existed previous to the enactment of the code.

The judgment of the Circuit Court is overruled, and the case is remanded with directions to enter final judgment sustaining the demurrer and dismissing the bill.