660 So.2d 333 (1995)
ADMINISTRATOR, RETREAT HOSPITAL, Petitioner,
v.
The Honorable W. Clayton JOHNSON of the Circuit Court of the Seventeenth Judicial Circuit In and For BROWARD COUNTY, Florida, Alan Schreiber, Broward County Public Defender, and Frederick A. Goldstein, Special Assistant Public Defender, Respondents.
No. 94-3196.
District Court of Appeal of Florida, Fourth District.
August 30, 1995.
*335 Barbara Carey del Castillo of Broad and Cassel, Fort Lauderdale, for petitioner.
Robert A. Butterworth, Attorney General, Tallahassee, and Charles A. Fahlbusch and Douglas J. Glaid, Assistant Attorneys General, Hollywood, for respondent-Judge W. Clayton Johnson.
Alan H. Schreiber, Public Defender, and Diane M. Cuddihy, Assistant Public Defender, Fort Lauderdale, for respondents-Alan H. Schreiber and Frederick A. Goldstein.
PARIENTE, Judge.
In this combined petition for writs of prohibition and quo warranto, petitioner, Administrator, Retreat Hospital, a psychiatric hospital (hospital), seeks to prohibit the trial court from taking further action in four different habeas corpus proceedings arising out of involuntary placements under the Baker Act and to prevent the Office of the Public Defender from exceeding the scope of its office. The hospital contends that the trial court embarked upon a regulatory review of Baker Act conditions in Broward County without subject matter jurisdiction at the unlawful request of the special assistant public defender.

FACTS
This case began when the hospital sought the involuntary placement of four individual patients under chapter 394 of the Florida Statutes, commonly known as the Baker Act. The four patients had been certified by the hospital for involuntary placement pursuant to section 394.467, Florida Statutes, and were transported to the hospital's facility by private individuals. The Office of the Public Defender was appointed to represent each of the patients in hearings on the petitions for involuntary placement scheduled for December 16, 1993.
One day prior to the hearings, December 15, 1993, the special assistant public defender filed four habeas corpus petitions naming the hospital as respondent, alleging that the patients had been transported to the hospital's facility by someone other than a law enforcement agency in direct violation of section 394.463, under which the patients were being involuntarily held and that, therefore, their confinement was unlawful. That same day, one of the patients was transferred from the hospital's facility to a medical facility. By December 24, 1993, the three other patients *336 had been discharged from the hospital's facility.
On January 11, 1994, the trial court dismissed each of the habeas corpus petitions, finding in each case that no violation of the patients' constitutional rights could arise because "an alleged improper transportation vehicle was used to deliver the patient[s]" to petitioner's facility for treatment. The special assistant public defender timely moved for rehearing on all four dismissals, asserting that he was not challenging the use of improper transportation vehicles, but rather challenging:
[T]he right of a private party to transport a person from their home to a hospital [sic], which may not be the nearest hospital, especially when the same private party executed the certificate of involuntary examination... .
The special assistant public defender asserted that this practice was in clear violation of section 394.463, governing involuntary examinations.[1] He further alleged that although the original patients had been released, the matter was not moot because it was possible of repetition and would otherwise escape judicial review. The four petitions for rehearing were considered by the trial court after which the trial court set a status hearing on the issue of "Chapter 394, Transportation of Patients," specifically on the matter of "involuntary examination involving private transportation from the patient's home to the hospital."
The trial court conducted hearings concerning the propriety of utilizing private transportation, rather than law enforcement officers, to transport persons who meet the criteria for involuntary examination. The cited abuse flowing from this practice, which allegedly occurred in the case of each of the four patients, was that patients were not being transported to the nearest receiving facility by a law enforcement officer as required by statute. After being noticed by the trial court, those present at the hearings included an assistant state attorney, an attorney for the hospital, the hospital's executive director and district program supervisor, an attorney for the Department of Health and Rehabilitative Services, a representative of the private transporting company, two general masters and the special assistant public defender.
The trial court rendered the first of two orders on May 6, 1994, finding that a law enforcement officer is responsible for transporting individuals who are to be involuntarily examined to the nearest receiving facility and that in Broward County the manner in which such individuals were taken to receiving facilities did not comply with the statutory mandate. Pursuant to these findings, the trial court ordered that:
[T]he Sheriff of Broward County, in recognition of his duties with respect to the providing of transportation services under Chapter 394, F.S. shall provide a plan as to how transportation services on a countywide basis will be provided and the date such services will be operational.
The trial court also ordered that:
Any person initiating a certificate or other document which is used to initiate an involuntary examination pursuant to either §§ 394.463(2) and (3), F.S. shall file with the clerk of courts within 24 hours of its execution the original certificate or other original document.
The trial court directed that another hearing be held within 90 days to ascertain the progress of the plan's development and to review budgetary information and statistical information if necessary. The hearing was set for September 13, 1994.
*337 On the day of the September 13th hearing, the hospital moved to strike all pleadings and papers and to vacate the trial court's order for lack of subject matter jurisdiction, arguing that the trial court was conducting an improper regulatory and advisory inquiry without subject matter jurisdiction because the matters were now moot as a result of the patients' release and because the writs had been dismissed. At the same time, the hospital also moved for reconsideration of the May 6, 1994 order. Both motions were denied by the trial court.
Following the September 13th hearing, the trial court rendered a second order dated September 19, 1994, entitled "Order on Baker Act Transportation and Procedures From Hearing of September 13, 1994 and Administrative Order." The trial court found that the system for transportation for involuntary examinations continued to be flawed. The trial court further noted that 1,287 petitions for involuntary placements (hospitalizations) were filed in Broward County in 1993, nearly twice the number filed in Dade County and three times the number filed for the same period in Palm Beach County. The trial court stated that:
Because of the systemic nature of the issues raised in this matter together with other cases brought to the attention of this court, this order shall also serve as an administrative order and further invokes the investigative powers of Chapter 394 so that the purposes of Chapter 394 can be obtained in an appropriate fashion and the rights of the citizens of this county can be assured.
Despite this broad introductory language, the trial court essentially repromulgated its May 6th order that effective immediately, transportation of everyone pursuant to chapter 394 was to be by a law enforcement officer in strict compliance with the countrywide transportation services plan formulated by the Sheriff of Broward County. However, the trial court additionally ordered "interested attorneys" and "especially those representing the State of Florida, Department of Health and Rehabilitative Services, State Attorney's Office, Office of the Attorney General" to brief it on the following proposals relative to Baker Act proceedings and procedures:
1. All certificates, pleadings or actions of any kind seeking an involuntary examination pursuant to §§ 394.463(1) and (3) F.S. must be presented to the Circuit Court, Probate Division with appropriate documentation for the consideration of the entry of a court order for involuntary examination. The only exception is when a law enforcement officer, because of a well documented emergency, initiates a certificate.
2. No receiving facility shall accept or admit anyone without a court order or with a valid certificate by a law enforcement officer illustrating a clear emergency and that detention for an involuntary examination is warranted.

LAW
Following entry of this order, the hospital filed this petition claiming that all of the trial court's orders and actions and the actions of the special assistant public defender were in excess of their authority. Our supreme court in English v. McCrary, 348 So.2d 293, 296 (Fla. 1977), explained that the narrow parameters for the writ of prohibition are:
[M]eant to be very narrow in scope, to be employed with great caution and utilized only in emergencies. Prohibition may only be granted when it is shown that a lower court is without jurisdiction or attempting to act in excess of jurisdiction. It is preventive and not corrective in that it commands the one to whom it is directed not to do the thing which the supervisory court is informed the lower tribunal is about to do. Its purpose is to prevent the doing of something, not to compel the undoing of something already done.
The supreme court distinguished between a trial court acting in excess of its jurisdiction versus a trial court's erroneous exercise of jurisdiction, noting that circuits courts are courts of general jurisdiction vested with broad powers. Id. at 297.
In analyzing whether the trial court acted without jurisdiction in any of the actions it has taken or intends to take in the cases before it, we distinguish between the trial *338 court's May 6th and September 19th orders regarding the transportation of patients and the extension of the September 19th order where the trial court indicated its intention to entertain further briefing on whether to require a court hearing and order before a facility could admit a patient as proposed by the special assistant public defender. Although the hospital broadly proclaims that all of the trial court's actions constituted an unlawful regulatory review of Baker Act conditions, we do not agree.
Here, the trial court initially had subject matter jurisdiction because the patients were hospitalized when the petitions for habeas corpus were filed. As provided in section 394.459(10), Florida Statutes (1991):
(a) At any time, and without notice, a person detained by a facility, or a relative, friend, guardian, representative, or attorney on behalf of such person, may petition for a writ of habeas corpus to question the cause and legality of such detention and request that the circuit court issue a writ for release. Each patient admitted to a facility for involuntary placement shall receive a written notice of the right to petition for a writ of habeas corpus.
(Emphasis added). Further, the scope of the initial petitions, which focused on allegations that the patients had been improperly transported in violation of section 394.463, also was authorized by section 394.459(10):
(b) A patient or his guardian or representatives may file a petition in the circuit court in the county where the patient is hospitalized alleging that the patient is being unjustly denied a right or privilege granted herein or that a procedure authorized herein is being abused. Upon the filing of such a petition, the circuit court shall have the authority to conduct a judicial inquiry and to issue any appropriate order to correct an abuse of the provisions of this part.

(Emphasis added). Pursuant to the clear language of the statute, the trial court had jurisdiction to conduct a judicial inquiry into the means by which the patients had been transported to the facility for involuntary examination if in violation of the statutory mandate and to issue appropriate orders to correct abuses of the provisions alleged to be violated. Both orders focused on the transportation of patients for involuntary examination, which was the exact abuse cited in the original habeas corpus proceedings.
The orders unquestionably impacted beyond the original patients, but the scope of the orders stem from the provision of the statute which grants the circuit court authority "to issue any appropriate order to correct an abuse of the provisions of this part." § 394.459(10)(b), Fla. Stat. (1993). The trial court did not usurp powers vested in either the legislature or in the Department of Health and Rehabilitative Services because the legislature specifically vested the trial court with the authority to conduct a judicial inquiry when it enacted section 394.459(10). Compare Gerry v. State, 448 So.2d 83 (Fla. 2d DCA 1984).
As we made clear in State v. Schreiber, 561 So.2d 1236, 1240 (Fla. 4th DCA 1990), juris. accepted, 573 So.2d 3 (Fla.), review denied, 581 So.2d 1310 (Fla. 1991), section 394.459(10) does not give the trial court a separate grant of jurisdiction to inquire into systemic abuses. See also AMI Anclote Manor Hosp. v. State ex rel. Weber, 553 So.2d 199 (Fla. 2d DCA 1989), juris. accepted, 560 So.2d 788 (Fla.), review dismissed, 574 So.2d 143 (Fla. 1990). To permit a judicial inquiry under this section, at a minimum, the patient complaining of "being unjustly denied a right or privilege granted [by the Baker Act] or [complaining] that a procedure authorized herein is being abused," section 394.459(10)(b), Florida Statutes (1993), must have suffered the cited abuse and been hospitalized when the petition was filed. These threshold requirements were satisfied in this case.
We find significant differences between this case and Schreiber, the principal case relied on by the hospital. In Schreiber, this court granted a writ of prohibition after the Department of Health and Rehabilitative Services challenged the jurisdiction of the trial court and the Office of the Public Defender of Broward County to conduct an inquiry into and issue orders with respect to the conditions, staffing patterns and treatment *339 of patients confined at South Florida State Hospital. 561 So.2d at 1243. The patient was not in custody, but had escaped when the public defender moved to intervene on her behalf and on behalf of "all other people similarly situated," id. at 1237, to request a judicial inquiry into conditions at South Florida Hospital in general. The trial court treated this request as a petition for writ of habeas corpus pursuant to section 394.459(10). Id. at 1238. The Office of the Public Defender had never been appointed to represent the patient. Id. at 1241-42.
Our court held that the subsequent all-encompassing order, which included monitoring of criminal mental patients on a case by case basis and addressing issues such as the square footage of floor space allotted to each patient, fire safety and food served to each patient cannot be justified by the escape of the inmate which occurred over ten years earlier. Id. at 1241. Here, the patients were in custody, the special assistant public defender had been appointed and the subject matter of the petitions was limited to the assertion that a procedure authorized by the Baker Act concerning the method of transporting patients was being abused.
Contrary to the hospital's assertion, the trial court's jurisdiction to conduct a judicial inquiry into the cited abuse did not terminate because the patients had been released. The trial court had jurisdiction because the patients were hospitalized when the original petitions on their behalf were filed. Once the patients were released, the issue then became one of mootness. However, mootness does not destroy a court's jurisdiction where the questions raised are of great public importance or are likely to recur. See Holly v. Auld, 450 So.2d 217, 218 n. 1 (Fla. 1984).
A court continues to retain jurisdiction over a petition, even where the original petitioner is no longer in custody where the issue raised is of sufficient importance to merit a ruling, the matters raised are subject to repetition or the matters raised consistently evade review. Harrell v. McMillan, 614 So.2d 1185 (Fla. 1st DCA 1993); C.L.B. v. Jones, 381 So.2d 1178 (Fla. 1st DCA 1980). The issue of transportation to a receiving facility under chapter 394 satisfies all of these criteria.
We also reject the hospital's contention that the special assistant public defender had no standing to file the habeas corpus petitions pursuant to section 394.459(10) because he was neither the patients' guardian nor representative within the meaning of the statute. The special assistant public defender was acting within his statutory authority provided by section 27.51(1)(d), Florida Statutes (1993), requiring the appointment of the public defender to represent indigent persons who are the subject of "involuntary placements as a mentally ill person." The special assistant public defender did not move to intervene on the patients' behalf as the public defender did in Schreiber, but was acting pursuant to his appointment by the trial court to represent the four indigent patients. Compare State v. Brummer, 426 So.2d 532 (Fla. 1982); Schreiber, 561 So.2d at 1236; AMI Anclote Manor Hosp., 553 So.2d at 200. Accordingly, the remedy of quo warranto, which is designed to challenge a public officer's attempt to exercise some right or privilege derived from the state, does not lie. See State ex rel. Bruce v. Kiesling, 632 So.2d 601, 603 (Fla. 1994).
However, when the trial court, in its September 19, 1994 order indicated its intent to consider additions to the statutory requirements for hospitalizing Baker Act patients by requiring a trial court order before hospitalization would be permissible, it was engaging in a process of statutory amendment beyond the scope of its powers. Department of Health and Rehab. Servs. v. Upchurch, 394 So.2d 577, 579 (Fla. 5th DCA 1981); Schwarz v. Nourse, 390 So.2d 389 (Fla. 4th DCA 1980). We do not agree that the trial court's authority to entertain these proposals could be justified as an administrative order, even though the trial judge was the chief administrative judge of the probate division.
An administrative order is defined as one necessary to administer properly the court's affairs. See rule 2.020(c); Upchurch, 394 So.2d at 579. To require a trial court order before a patient could be transported for *340 involuntary examination would essentially amend or alter section 394.463(2)(b), which as written appears to allow a patient to be transported for involuntary examination upon a "certificate by an authorized professional." It would be a long stretch to label this order as an administrative order. Even assuming that this inquiry would involve statutory construction, rather than statutory amendment, the trial court's order went far beyond the scope of the initial petition filed in this case by seeking to explore alternative methods for the initiation of involuntary examinations of Baker Act patients.

CONCLUSION
In conclusion, because in this case the Office of the Public Defender had been appointed to represent the patients who had been committed pursuant to the Baker Act, we do not find that the special assistant public defender unlawfully exceeded his authority by filing the petitions for habeas corpus pursuant to section 394.459(10). The trial court likewise did not exceed its jurisdiction when it issued the May 6th and September 19th orders relating to the transportation of patients for involuntary examinations. However, as indicated by the order of September 19th, the trial court was about to embark on an inquiry concerning the procedure by which patients could be committed for involuntary examination pursuant to the Baker Act, thereby addressing areas beyond those abuses raised in the original petitions for habeas corpus. The scope of this additional inquiry cannot be justified as either an administrative order or, under the facts of this case, as a proper judicial inquiry under section 394.459(10).
We accordingly grant prohibition to prevent this additional inquiry beyond the scope of the trial court's jurisdiction.
DELL and KLEIN, JJ., concur.
NOTES
[1] Florida Statute 394.463(2) reads, in pertinent part:

(a) Initiation of involuntary examination.
....
2. A law enforcement officer shall take a person who appears to meet the criteria for involuntary examination into custody and deliver him or have him delivered to the nearest receiving facility for examination... .
....
(b) Transportation for involuntary examination.  Each county shall designate a single law enforcement agency within the county, or portions thereof, which shall take a person into custody upon the entry of an ex parte order or the execution of a certificate by an authorized professional and which shall transport that person to the nearest receiving facility for examination... .