# Supreme Court of Florida

_____

No. SC17-1122
_____

**LEAGUE OF WOMEN VOTERS OF FLORIDA, et al.,**
Petitioners,

vs.

**RICK SCOTT, GOVERNOR,**
Respondent.

[December 14, 2017]

PER CURIAM.

This case is before the Court on the petition of the League of Women Voters of Florida (the League) for a writ of quo warranto. Because the issue presented is not ripe for consideration, we dismiss the petition.

The League asks this Court to issue a writ of quo warranto against Governor Rick Scott prohibiting him from "filling any judicial vacancies on Florida's appellate courts that occur due to terms expiring in January 2019." The League's basis for filing the petition is Governor Scott's December 2016 announcement of intent to appoint the replacements for three justices of this Court. However, use of the writ to address prospective conduct is not appropriate.

Quo warranto is used "to determine whether a state officer or agency has improperly exercised a power or right derived from the State," Fla. House of Representatives v. Crist, 999 So. 2d 601, 607 (Fla. 2008) (emphasis added), and the history of the extraordinary writ reflects that petitions for relief in quo warranto are properly filed only after a public official has acted.[1]  In Swoope v. City of New Smyrna, 125 So. 371 (Fla. 1929), we explained that a challenge to an individual's exercise of official authority

> will not be determined by bill in chancery, such a case being regarded as appropriately falling within the jurisdiction of the common law courts by proceedings in quo warranto.  And since this remedy is applicable the moment an office or franchise is usurped, an injunction will not lie to prevent the usurpation, even though the respondent has not yet entered upon the office or assumed to exercise its functions.  In such case the party aggrieved should wait until an actual usurpation has occurred, and then seek his remedy in quo warranto.

Id. at 372 (quoting MacDonald v. Rehrer, 22 Fla. 198, 205-06 (1886)) (emphasis added); see also MacDonald, 22 Fla. at 206 (explaining that quo warranto is "to be

---

1. We recognize that Crist contained language suggesting the writ could be used to prohibit future conduct.  See, e.g., 999 So. 2d at 607 ("The Governor contends that this Court lacks jurisdiction because the House does not seek either to remove him from office or to enjoin the future exercise of his authority.  We conclude, however, that these are not the only grounds for issuing such a writ.").  However, the history of quo warranto as well as our precedent belie any suggestion to this effect.  In Crist, we explained that "petitions for the writ historically have been filed after a public official has acted," and the disputed act had already occurred.  Id.  In that case, the Florida House of Representatives challenged the execution by Governor Charles Crist of a compact with the Seminole Indian Tribe of Florida.  See id. at 603.

invoked <u>after</u> entry into, or <u>exercise of authority</u> under [a public official's] appointment" (second emphasis added)).  A party must wait until a government official has acted before seeking relief pursuant to quo warranto because a threatened exercise of power which is allegedly outside of that public official's authority may not ultimately occur.  To address whether quo warranto relief is warranted under such premature circumstances would amount to an impermissible advisory opinion based upon hypothetical facts.

We previously considered whether issuance of the writ was appropriate in situations where the state officer or agency had already acted.  For example, in <u>Whiley v. Scott</u>, 79 So. 3d 702, 705 (Fla. 2011), we reviewed a completed action, in that the challenged executive order had already been issued.  The same is true of <u>State ex rel. Butterworth v. Kenny</u>, 714 So. 2d 404, 406 (Fla. 1998), <u>receded from on other grounds by</u> <u>Darling v. State</u>, 45 So. 3d 444 (Fla. 2010), where we considered the authority of the Office of the Capital Collateral Regional Counsel for the Northern and Southern Regions to represent death row inmates in civil rights actions.[2]  Most recently, in <u>Ayala v. Scott</u>, 224 So. 3d 755, 756-57 (Fla. 2017), we held that quo warranto was an appropriate vehicle for the state attorney

---

    2. Although the United States District Court for the Northern District of Florida issued summary judgment in favor of the State, <u>see</u> <u>Kenny</u>, 714 So. 2d at 406, the federal civil rights action had nonetheless been filed and we, therefore, addressed a past action taken by a state agency.

- 3 -

for the Ninth Judicial Circuit to challenge a series of executive orders that reassigned the prosecution of a number of pending death-penalty eligible cases to the state attorney of another judicial circuit.

Although Governor Scott announced his intent to appoint the replacements for three justices of this Court, clearly no appointments have been made. To use quo warranto to review an action which is merely contemplated but not consummated, as in the present case, would require this Court to depart from the historical application of the writ. This we decline to do. Until some action is taken by the Governor, the matter the League seeks to have resolved is not ripe, and this Court lacks jurisdiction to determine whether quo warranto relief is warranted.

Based upon the foregoing, the petition is hereby dismissed.

It is so ordered.

LABARGA, C.J., and CANADY, POLSTON, and LAWSON, JJ., concur.
QUINCE, J., concurs in result only with an opinion, in which PARIENTE, J., concurs.
LEWIS, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

QUINCE, J., concurring in result only.

While I agree with the majority's conclusion that the "issue presented is not ripe for consideration," majority op. at 1, I also agree with Justice Lewis that this Court could properly review a petition for quo warranto prior to the actual

appointment of a new justice. I write separately to clarify what I believe to be an improper focus in both opinions and to highlight the concessions made by Governor Scott's counsel during oral argument regarding the Governor's authority to make these appointments.

The majority currently states:

> Although Governor Scott announced his intent to appoint the replacements for three justices to this Court, <u>clearly no appointments have been made</u>. To use quo warranto to review an action which is <u>merely contemplated but not consummated</u>, as in the present case, would require this Court to depart from the historical application of the writ. This we decline to do. <u>Until some action is taken</u> by the Governor, the matter the League seeks to have resolved is not ripe, and this Court lacks jurisdiction to determine whether quo warranto relief is warranted.

Majority op. at 4 (emphasis added). First, the majority implies that the action would not be ripe until the Governor makes an appointment ("clearly, no appointments have been made . . . merely contemplated but not consummated"). However, the majority then appears to suggest that only "some action" would be necessary for this Court to consider the Governor's authority to make said action. Majority op. at 4. This inconsistent language creates unnecessary confusion about when a future petition for quo warranto would be ripe for this Court's consideration. This confusion is compounded by Justice Lewis' dissent, which also focuses on the presumption that the issue may only become ripe once the Governor has made an appointment. <u>See</u> Dissenting op. at 11 ("The

- 5 -

majority's statement today that the appointment must be consummated before quo warranto applies . . . .").

Furthermore, the majority ignores that we have previously granted a petition for a writ of quo warranto challenging the Governor's authority to endeavor to fill a judicial vacancy. Lerman v. Scott, No. SC16-783, 2016 WL 3127708 (Fla. Jun. 3, 2016). In Lerman, the petitioners sought the writ of quo warranto "to show by what authority [Governor Scott] has endeavored to fill a vacancy, created by the Resign to Run statute, in the office of county court judge, in Group 11 of the Fifteenth Judicial Circuit, through an appointment." Petition at 1, Lerman v. Scott, No. SC16-783. We granted the writ in Lerman because Governor Scott acted by requesting the Judicial Nominating Commission to provide a list of names for his consideration to make an appointment. Lerman, 2016 WL 3127708, at *1 ("The Governor shall not utilize the Fifteenth Judicial Circuit Judicial Nominating Commission to perform any functions related to nominating candidates for this judicial office."). Thus, unlike the dissent's characterization of Lerman, we were not merely responding to an announced intention, dissenting op. at 11, but did find an action short of an actual appointment by which the petitioner could question the Governor's authority. Under this Court's precedent, we have the authority to act prior to the Governor's making an appointment that is contrary to law.

On the merits of the instant petition, at oral argument in this Court, Governor Scott's counsel conceded that "the Governor's term concludes at the end of the day on [the first] Monday" in January, "the same day that the Justices' terms end."[3] The Governor's counsel further conceded that if the justices do not leave before the end of their terms and "if the new governor's term has begun, then the new governor would have the authority to make the appointment."[4] This position is the same as that taken by the majority of Florida voters in 2014 in response to a proposed constitutional amendment which would have required the Governor "to prospectively fill vacancies in a judicial office."[5]

---

3. Gavel to Gavel Video Portal, Archived Oral Argument of League of Women Voters of Fla. v. Rick Scott, Governor, SC17-1122, (Nov. 1, 2017, at 28:10, 29:44) (available at http://www.wfsu.org/gavel2gavel/viewcase.php?eid=2462).

4. Gavel to Gavel Video Portal, Archived Oral Argument of League of Women Voters of Fla. v. Rick Scott, Governor, SC17-1122, (Nov. 1, 2017, at 33:06, 36:15) (available at http://www.wfsu.org/gavel2gavel/viewcase.php?eid=2462).

5. Fla. Dep't of State, Div. of Elections, Prospective Appointment of Certain Judicial Vacancies, http://dos.elections.myflorida.com/initiatives/initdetail.asp?account=10&seqnum=91. The proposed amendment garnered the support of only 47.9% of voters, well short of the 60% threshold for constitutional amendments. N.Y. Times, Florida Election Results, (Dec. 17, 2014), https://www.nytimes.com/elections/2014/florida-elections; see Art. XI § 5, Fla. Const.

The Governor's concession reflects Florida law.  Under the Florida Constitution, when a vacancy occurs in a judicial office to which election for retention applies, "the governor shall fill the vacancy by appointing for a term ending on the first Tuesday after the first Monday in January of the year following the next general election."  Art. V, § 11(a), Fla. Const.  However, a vacancy exists only "upon the expiration of the term being served by the justice."  Art. V, § 10(a), Fla. Const.  We have explained that this provision "expressly provides that a vacancy in a merit retention judicial office does not occur until the end of the judge or justice's term."  Advisory Op. to Governor re Judicial Vacancy Due to Mandatory Retirement, 940 So. 2d 1090, 1091 (Fla. 2006) (emphasis added).

Moreover, under article IV, section 5(a), of the Florida Constitution, a governor's term does not begin until "the first Tuesday after the first Monday in January" of the year following the general election.  As noted in an appendix to the instant petition filed in this Court, Governors Bush, Crist, and Scott all took the oath of office well before the first Tuesday after the first Monday in January so as to assume gubernatorial duties immediately on the first day of their respective terms.  See App. to Pet'rs' Reply at 2-4.

Although not before us, the Governor also conceded that a declaratory action would be appropriate to challenge his endeavor to replace the retiring justices.[6] I agree. Moreover, while I agree with the majority that it is not appropriate for us to rule on the petition at this time, I do not agree that it would only become appropriate to do so after Governor Scott has consummated an appointment. Furthermore, the concession made by the Governor during oral argument effectively answers the question raised in the petition.

PARIENTE, J., concurs.

LEWIS, J., dissenting.

It is most unfortunate that the majority finds it necessary to summarily dismiss this common law action to protect our State from blatantly unconstitutional actions[7] for reasons other than a proper analysis of the law and do so directly contrary to the application of quo warranto in this judicial appointment context in 2016 in Lerman v. Scott, No. SC16-783, 2016 WL 3127708 *1 (Fla. June 3, 2016), in which the entire Court either concurred or concurred in result. It is even more

---

6. Gavel to Gavel Video Portal, Archived Oral Argument of League of Women Voters of Fla. v. Rick Scott, Governor, SC17-1122, (Nov. 1, 2017, at 39:33) (available at http://www.wfsu.org/gavel2gavel/viewcase.php?eid=2462) ("I'm not saying there might not be some other vehicle available to solve this question—an advisory opinion request, possibly a declaratory judgment . . . .").

7. See Advisory Op. to the Governor re Jud. Vacancy Due to Mandatory Ret., 940 So. 2d 1090, 1093-94 (Fla. 2006).

regrettable and distressing that future Floridians have lost the ability to protect themselves and society from clearly unconstitutional action. The Florida Constitution requires devoted protection and the Florida citizens deserve better. Contrary to Florida law and the general common law, the majority has now announced that the challenged conduct must have already produced a constitutional crisis and calamitous result before illegal acts of government officials are subject to quo warranto review or relief. Florida law has generally recognized that quo warranto is available to prevent significant impacts on the operation of government, Whiley v. Scott, 79 So. 3d 702, 708 (Fla. 2011), but the majority now negates that common sense, reasonable, and logical analysis to require that that illegal and unconstitutional conduct which produces disarray must have already occurred to allow judicial action. While writs of quo warranto may be applied to acts of state officials that have already been committed, the writ is not foreclosed as an avenue of relief for threatened and imminent future actions of state officials, based on the clear Florida law.

As recently as the summer of 2016, this Court granted a petition for writ of quo warranto in response to an announced intention by a Governor to appoint (not having already appointed) a judicial officer to fill a position vacated by a judge seeking higher office. Lerman, 2016 WL 3127708, at *1. County Court Judge Johnson resigned pursuant to the Resign to Run statute and Lerman submitted the

necessary paperwork to become a candidate for the judicial position previously held by Judge Johnson. Governor Scott, as he has done here, announced that he was going to make an appointment to the position held by Judge Johnson. Lerman filed a petition for writ of quo warranto in this Court to prevent Governor Scott from appointing or attempting to appoint a person to the position previously held by Judge Johnson contrary to law. This Court granted the petition for quo warranto and ordered the position filled by election. Id. This Court further ordered that any functions related to the future appointment of candidates for this position terminate. Id. The majority's statement today that the appointment must be "consummated" before quo warranto applies is simply incorrect, contrary to common sense, and, in my view, dangerous. Majority op. at 4.

Under the majority view, elected politicians can announce their intentions and plan to engage in all types of illegal and harmful conduct but no relief is available until the illegal and harmful act has already inflicted its damage. Magnificent trees cut, pristine waters fouled, and unthinkable harm inflicted upon our citizens, which may not be prevented when the actor plans and even announces his intentions. Today, we have a new test. The writ is only available when the illegal act is taken and harm is actually inflicted—at times even irreparable harm.

The majority simply ignores that the Supreme Court of Vermont has recently granted a petition for writ of quo warranto under virtually identical circumstances

- 11 -

as we face here. <u>Turner v. Shumlin</u>, 163 A.3d 1173 (Vt. 2017). In Vermont, the former Governor announced his intention to appoint the replacement for a current Supreme Court Justice who decided not to seek retention for another term. <u>Id.</u> at 1176. The Justice's term would not expire until after the current Governor's term had expired. <u>Id.</u> The same argument was made in Vermont as is advanced by the majority here that the court could not act until an illegal appointment was actually made. <u>Id.</u> at 1177. In rejecting the principle announced by the majority here, the Supreme Court of Vermont recognized that the circumstances were not conjectural, hypothetical, or abstract. <u>Id.</u> The announced intentions were concrete and unequivocal. <u>Id.</u> Understanding that there is a fundamental interest in ensuring that the constitutional process is sound, the court held that the Governor could not constitutionally appoint the Justice in question's replacement. <u>Id.</u> at 1188. We must all heed the closing words from the Vermont Supreme Court:

> We reach our decision having in mind the overarching principles of our democracy: the integrity of our governing institutions and the people's confidence in them.

<u>Id.</u>

Today, the majority opinion has chosen to cherrypick only certain rules with regard to writs of quo warranto, while ignoring the clear precedent from Florida and other jurisdictions that have emphasized the notion that the writ can be appropriate in cases of <u>threatened or attempted action</u> by a state official. <u>State ex</u>

rel. Bruce v. Kiesling, 632 So. 2d 601, 603 (Fla. 1994) ("[W]e note that the common law remedy of quo warranto is employed either to determine the right of an individual to hold public office or to challenge a public officer's <u>attempt to exercise</u> some right or privilege derived from the State." (emphasis added)); <u>State ex rel. Ervin v. Jacksonville Expressway Auth.</u>, 139 So. 2d 135, 137 (Fla. 1962) ("It is a proper function of the Attorney General, in the interest of the public, to test the exercise, <u>or threatened exercise</u>, of power by such a corporate state agency through the process of a quo warranto proceeding." (emphasis added)); <u>Adm'r, Retreat Hosp. v. Johnson</u>, 660 So. 2d 333, 339 (Fla. 4th DCA 1995) ("[T]he remedy of quo warranto . . . is designed to challenge a public officer's <u>attempt to exercise</u> some right or privilege derived from the state . . . ." (emphasis added)).[8]

---

8. <u>See also</u> Richard W. Ervin & Roy T. Rhodes, <u>Quo Warranto in Florida</u>, 4 U. Fla. L. Rev. 559, 564 (1951) ("Injunction will not lie to prevent usurpation of a franchise or office, even though the respondent has not entered upon the duties of the office. The remedy is at law, by quo warranto, to be invoked after entry <u>or an attempt</u> to exercise authority by virtue of the election or appointment." (emphasis added) (citing <u>Winter v. Mack</u>, 194 So. 225 (Fla. 1940); <u>MacDonald v. Rehrer</u>, 22 Fla. 198 (1886)); 43 Fla. Jur. 2d <u>Quo Warranto</u> § 32 (2015) ("[I]t is a proper function of the Attorney General, in the interest of the public, to test exercise, <u>or threatened exercise</u>, of power by a corporate state agency through the process of a quo warranto proceeding." (emphasis added)); Phillip J. Padovano, <u>Florida Appellate Practice</u> § 3:16 (2016 ed.) ("Quo warranto is . . . commonly used in the supreme court to challenge <u>proposed actions</u> that are beyond the authority of a public official." (emphasis added)); Patrick John McGinley, <u>Elements of an Action</u> § 1703:1 (West's Fla. Prac. Series Vol. 21 2017-2018 ed.) ("Petitions for a writ of quo warranto historically have been filed after a public official has acted. <u>But the writ is also available to challenge future actions</u>." (emphasis added)).

> [I]t has been held that unlawful exercise of a franchise can be challenged by quo warranto, even though such exercise is merely planned and has not yet begun, where preparation and public announcement have made the matter imminent and taken it out of the realm of mere general intention.[n.4]
>
> > [n.4] State ex rel. City Bank & Trust Co. v. Marshall & Ilsley Bank, 4 Wis. 2d 315, 90 N.W.2d 556 (1958).

65 Am. Jur. 2d Quo Warranto § 50 (2011) (emphasis added).

Moreover, this Court has, in the past, entertained a petition for writ of quo warranto in a case challenging the powers and duties of certain state actors, where no attempt to exert such powers had yet been taken. See State ex rel. Feltman v. Hughes, 49 So. 2d 591 (Fla. 1950). Similarly, courts across the United States have applied the remedy of a writ of quo warranto to threatened future actions. See Shumlin, 163 A.3d 1173 (petition for quo warranto seeking to enjoin the governor from filling a future judicial vacancy occurring after the governor's term was ripe for review); Marshall & Ilsley Bank, 90 N.W.2d at 559 (remedy of quo warranto not premature where defendant announced its intent to act because the announcement took the challenged actions out of the realm of mere general intention). Thus, the majority's opinion today engages in a selective legal analysis and refuses to acknowledge the nationwide precedent that contradicts its conclusion.

Further, in State ex rel. Butterworth v. Kenny, 714 So. 2d 404, 406 (Fla. 1998), the complained-of conduct had ceased and the civil litigation actions at

- 14 -

issue had been dismissed, so there was no present conduct necessary for this Court to rule on. Nonetheless, this Court determined that it should still address the issue raised because it was one of great public importance and was likely to recur and ultimately held that no future civil actions could be filed by Capital Collateral Regional Counsel. Id. at 406, 411. Therefore, as demonstrated in Kenny, the intention to act is not foreclosed from quo warranto relief.

Additionally, I take issue with the majority's attempt to limit the writ of quo warranto only to past acts, when this Court has, in the past, declined to so limit a similar arbitrary challenge to the timeliness of a petition for writ of quo warranto. For example, in Florida House of Representatives v. Crist, 999 So. 2d 601 (Fla. 2008), the then-governor challenged the appropriateness of the relief of quo warranto where the House of Representatives challenged Governor Crist's execution of a compact with the Seminole Indian Tribe of Florida because he had already signed the compact, arguing that the writ's issuance was foreclosed for past state acts. Id. at 607. In that case, as in the present case, the governor attempted to handicap the writ of quo warranto based on the arbitrary notion that the writ is limited to actions committed at specific times. The attempt to do so here, as in Florida House of Representatives, should fail. I fundamentally disagree with depriving the citizens of Florida of their ability to challenge inappropriate action by a state official simply based on this unfounded limitation. Today's decision

- 15 -

allows state officials, such as Governor Scott, to circumvent this extraordinary writ at the convenience of the office holder based on a ripeness challenge that does not, in my view, have any legal justification.

The majority further wrongly attempts to cloak its flawed reasoning in a reluctance to discuss the historical application of the writ, majority op. at 4, despite our past precedent authorizing the Court to do just that, upon proper showing. See State ex rel. Watkins v. Fernandez, 143 So. 638, 641 (1932) (discussing how this Court has, on many occasions, used the common law writ of quo warranto and applied it to circumstances beyond those originally intended because equity mandates that a wrong have a remedy and that the law should evolve with the varying needs of society); Belle Island Inv. Co. v. Feingold, 453 So. 2d 1143, 1146 (Fla. 3d DCA 1984) ("Quo warranto is a remedial writ and its use may be extended to new situations on a proper showing." (citing State ex rel. Pooser v. Wester, 170 So. 736 (Fla. 1936))).

The majority goes astray because it relies entirely upon cases in which a challenged action has already occurred. I do not disagree with this application of quo warranto under those circumstances. The majority predicates its flawed reasoning by interpreting those cases to say that quo warranto can only be based on those past acts. Yet, no case in Florida so limits this extraordinary writ. Therefore,

I disagree with the majority's conclusion, as it applies to this case. Thus, for the reasons set forth above, I dissent.

Further, although as unfortunate as the majority's dismissal may be, the concurring opinion is even more misdirected. It appears that those concurring in result seem to now believe that mere arguments of counsel or statements of counsel in response to general questions, interpreted to be "concessions," have been transformed into some type of final, binding legal stipulations that now prohibit and preclude, as a matter of law, the precise subject matter that generated this action seeking quo warranto relief. The majority has certainly not endorsed that view and I must admit it is a theory highly questionable at the very best.

Original Proceeding – Quo Warranto

John S. Mills, Thomas D. Hall, Courtney Brewer, and Andrew D. Manko, The Mills Firm, P.A., Tallahassee, Florida,

    for Petitioner

Daniel E. Nordby, General Counsel, John P. Heekin, Meredith L. Sasso, Peter L. Penrod, and John MacIver, Assistant General Counsel, Executive Office of the Governor, Tallahassee, Florida;

    for Respondent