720 So.2d 568 (1998)
HENRY & RILLA WHITE FOUNDATION, INC., Petitioner,
v.
Michelle MIGDAL, Esq., Special Public Defender; Richard Jorandby, Public Defender, Palm Beach County; Juvenile Advocacy Project; Palm Beach County Legal Aid Society, Inc.; and Florida Department of Children & Family Services, Respondents.
No. 97-3544.
District Court of Appeal of Florida, Fourth District.
October 1, 1998.
*569 Howard Talenfeld of Colodny, Fass and Talenfeld, P.A., Fort Lauderdale, and Timothy L. Arcaro, Fort Lauderdale, for petitioner.
Robert A. Butterworth, Attorney General, Tallahassee, and Charles M. Fahlbusch, Assistant Attorney General, Fort Lauderdale, for respondent Honorable Richard B. Burk, Circuit Judge of the Fifteenth Judicial Circuit.
Michelle Migdal of Migdal & Migdal, P.A., Boynton Beach, for respondent Michelle Migdal, Esq., Special Public Defender.
Richard L. Jorandby, Public Defender, and Margaret Good-Earnest, Assistant Public Defender, West Palm Beach, for respondent Richard Jorandby, Public Defender, Palm Beach County.
Vikki Lynn Wulf, and Sylvia L. Wenger of Steel, Hector & Davis, West Palm Beach, for respondents Juvenile Advocacy Project and Palm Beach County Legal Aid Society, Inc.
GROSS, Judge.
Petitioner, the Henry and Rilla White Foundation, is a not-for-profit corporation *570 that operates the Kurt Emmanuel Haire Center for Children (the "shelter") in Riviera Beach, Florida. The center is a contract, non-secure shelter[1] for dependent and delinquent children. On July 21, 1997, in connection with an incident occurring on the grounds of the shelter, two female juvenile residents, A.M. and P.D., were arrested on the charges of sexual battery, aggravated assault, and simple battery.
On July 23, 1997, at a detention hearing before Judge Burk, these children and others told the court about abuse inflicted upon them at the shelter by shelter staff members. The children's complaints were consistent with numerous other reports of abuse and neglect at the shelter, made in open court in the summer of 1997. The shelter had been open for only six weeks when A.M. and P.D. were arrested. On July 10, 1997, Judge Burk had asked the State Attorney's Office to "look into" incidents at the shelter, all indicative of a lack of proper supervision by staff members. The Guardian Ad Litem Program of Palm Beach County visited the facility on July 8 and reported numerous security related concerns to the Department of Children and Families, including the housing of dependent, delinquent, and severely disturbed children at the same shelter, with little supervision. Having received information from so many sources, Judge Burk was concerned about the safety of children that had been housed in the shelter in dependency and delinquency cases. He had asked the Department of Children and Families (DCF) to advise the court whether it was safe to send children to the shelter. As of July 25, no state agency had provided Judge Burk with a considered evaluation of safety issues at the shelter.
Also before the court in July 1997, was P.D.'s history of abuse and dependence. Born on October 10, 1984, she first came under the jurisdiction of the juvenile court in May, 1985, when HRS petitioned for emergency shelter care as a result of her admission to Bethesda Hospital with second degree burns. At the age of five, P.D. was adjudicated dependent and placed in the custody of her maternal aunt. In November 1996, P.D. was placed in foster care, with the case plan goal of long term foster care. On May 6, 1997, P.D. was adjudicated delinquent on a charge of misdemeanor battery; she received a suspended commitment to DCF for placement "in an intensive mental health residential treatment program with clinical and non-clinical services." This placement never occurred. Instead, P.D. was sent to live at the shelter, where she was not provided any mental health treatment.
Similarly, in July 1997, the court had before it A.M.'s history in the juvenile system. For the second time, A.M. was adjudicated a dependent child in April 1997, and she was placed in long term foster care in the custody of the department. The petition for dependency indicated that the child's mother had repeatedly locked her out of the home and that all relatives had refused to house her. A.M. was placed at the shelter as a dependent child.
Judge Burk appointed Michelle Migdal as a special assistant public defender and attorney ad litem for A.M. The body of a written order read:
The Court has been advised this date of physical abuse charges directed to A.M. by staff at the White Foundation. The Court has been advised of additional physical abuse complaints made by other children in the facility. The Court hereby appoints Michelle Migdal, Esq., in the best interest of the child, to represent the child in investigating these matters, in the same manner that Michelle Migdal, Esq., previously represented a child in investigating the Palm Beach Halfway House, The Palm Beach Marine Institute, CARP and DATA, and report back to the Court. She is authorized and directed to take such depositions with regard to this matter that she may deem appropriate and all parties to whom these presence [sic] shall come, shall cooperate with her in her investigation; provided, *571 however, this shall not be deemed a grant of any immunity nor shall it be deemed a waiver of anyone's constitutional right amendment for incrimination.
At the July 23 detention hearing, Judge Burk appointed the public defender to represent P.D. in the juvenile case. Assistant public defender Barbara White reviewed the file and informed the court of the outstanding suspended commitment order with which the department of juvenile justice had not complied. White moved that the court order the department to comply with the order and place P.D. at Sandy Pines Mental Hospital within 24 hours. The court granted the motion and ordered the department to comply with the May 6 order. The clerk's progress notes indicate that the court orally ruled that "B. White may also investigate Re: White foundation." At the close of the hearing, P.D. was ordered into secure detention.
Not until July 29, was P.D. released from secure detention to the Sandy Pines Mental Hospital. On September 9, 1997, Judge Burk entered a written order appointing the Juvenile Advocacy Project of the Legal Aid Society of Palm Beach County and Assistant Public Defender Barbara White to represent P.D., as her "attorney in all court proceedings, DCF matters, mental health matters, education matters and matters in general as it relates to the White Foundation to assure that the child(ren) receive the treatment the child(ren) need."
After Migdal attempted to depose employees of the foundation, the foundation moved for a protective order and for an order dissolving the investigation. At the hearing on the motions, the court commented that it had not empaneled a separate investigative agency to supplant the department, but that it had appointed Migdal and White to represent specific children regarding specific matters before the court. The court denied the motion to dissolve the investigation.
The foundation filed in this court a petition for writs of prohibition, quo warranto, or common law certiorari against Judge Burk, Michelle Migdal, Richard Jorandby as Public Defender of the Fifteenth Judicial Circuit, and the Juvenile Advocacy Project, seeking to block the orders authorizing the attorneys' investigation into safety issues at the shelter. All of these parties have responded to the petition. Although listed as a party, the Department of Children and Family Services made no appearance in this proceeding. In the trial court, the department indicated that it had not conducted a detailed investigation of the safety of the shelter after the report of the sexual battery, but had deferred to the investigation that Judge Burk had ordered.
This case is about the power of the circuit court to authorize lawyers representing children in proceedings under Chapter 39, Florida Statutes (1995 & Supp.1996), to investigate safety conditions at a facility where the juveniles have been placed in the past and where they might be sent in the future.
Simply stated, one value underlying all of Florida's juvenile law is that the circuit judge should do the right thing for the child. Chapter 39 gives a circuit judge the power to control and regulate a child's case from the time jurisdiction attaches until after the child passes the age of eighteen. A child's safety is a proper concern of the court at all stages of the court's jurisdiction.
The circuit court has exclusive original jurisdiction of "proceedings in which a child is alleged to have committed a delinquent act or violation of law,"see § 39.022(1), Fla. Stat. (1995), as well as "all proceedings under parts III, IV, V, and VI" of Chapter 39 pertaining to dependency, families and children in need of services, children in foster care, and termination of parental rights. See § 39.40(2), Fla. Stat. (1995). In delinquency cases, jurisdiction attaches "to the child and the case when the summons is served upon the child ... or when the child is taken into custody with or without service of summons and before or after the filing of a petition [of delinquency], whichever first occurs." § 39.049(7), Fla. Stat. (1995). For dependency cases, "[j]urisdiction attaches when the initial shelter petition, dependency petition, or termination petition is filed or when a child is taken into the custody of the department." § 39.40(2), Fla. Stat. (1995).
Once jurisdiction has been obtained by the circuit court in a delinquency case, the court *572 retains jurisdiction in most cases,[2] "unless relinquished by its order, until the child reaches 19 years of age." § 39.022(4)(a), Fla. Stat. (1995). For a child found to be dependent, once the court obtains jurisdiction, it retains jurisdiction, "unless relinquished by its order, until the child reaches 18 years of age." § 39.40(2), Fla. Stat. (1995).
Having obtained jurisdiction over a child, a circuit judge is bound to carry out the responsibilities which Chapter 39 places upon the court consistently with the chapter's declared legislative intent. Section 39.001, Florida Statutes (Supp.1996), provides in pertinent part:
(1) The purposes of this chapter are:

* * * * * *
(b) To provide for the care, safety, and protection of children in an environment that fosters healthy social, emotional, intellectual, and physical development; to ensure secure and safe custody; and to promote the health and well-being of all children under the state's care.
* * * * * *
(d) [W]hen the child is removed from his or her own family, to secure for the child custody, care, and discipline as nearly as possible equivalent to that which should have been given by the parents; and to assure, in all cases in which a child must be permanently removed from parental custody, that the child be placed in an approved family home, adoptive home, independent living program, or other placement that provides the most stable and permanent living arrangement for the child, as determined by the court.

* * * * * *
(3) It is the intent of the Legislature that this chapter be liberally interpreted and construed in conformity with its declared purposes.
(Emphasis supplied). For dependent children, the legislature has emphasized its concern for children's safety by stating its intent that "placement shall be in a safe environment where drugs and alcohol are not abused." § 39.40(5), Fla. Stat. (1995). Given this statutory language, an appropriate concern of a juvenile judge at every stage of a Chapter 39 proceeding is whether custodial facilities are "secure and safe."
Section 39.054(1), Florida Statutes (1995), "empowers the trial court to determine an appropriate sanction and rehabilitative program for the adjudicated delinquent child." T.R. v. State, 677 So.2d 270, 271 (Fla.1996). The safety of the child is one factor a juvenile judge might properly consider at a disposition hearing, where the statute allows the court to
receive and consider any other relevant and material evidence, including other written or oral reports or statements, in its effort to determine the appropriate disposition to be made with regard to the child. The court may rely upon such evidence to the extent of its probative value, even though such evidence may not be technically competent in an adjudicatory hearing.
§ 39.052(4)(h), Fla. Stat. (Supp.1996); see also Fla.R.Juv.P. 8.115(a). Although a court may not require a child committed to the department to be placed in a specific facility,[3] concerns for the safety of a facility might properly inform the court's decision as to the appropriate restrictiveness level under section 39.052(4)(e), or even whether the child should be committed to the department at all under section 39.052(4)(d).
Even after imposing a sentence, a court may modify or set aside the sentence or suspend a disposition and place a child on community control. Section 39.054(3), Florida Statutes (1995), provides that any disposition order of a child adjudicated delinquent "may thereafter be modified or set aside by *573 the court." See T.R., 677 So.2d at 271. Section 39.054(8), Florida Statutes (1995) states:
The court may, upon motion of the child or upon its own motion, within 60 days after imposition of a disposition of commitment, suspend the further execution of the disposition and place the child on probation in a community control program upon such terms and conditions as the court may require.
Similarly, the court retains jurisdiction to modify detention and shelter orders and to change the conditions of temporary legal custody or protective supervision after a child has been adjudicated to be dependent. See § 39.044(9) & (10), Fla. Stat. (Supp.1996), §§ 39.402(11), 39.41(2)(a)9.a., Fla. Stat. (1995). Safety concerns are one factor that a court could take into consideration in deciding whether to enter a post-disposition order.
The provisions of Chapter 39 provide a juvenile court judge the flexibility to factor a child's safety into a custody decision at all stages of a juvenile proceeding. As the first district observed in In the Interest of J.M., 499 So.2d 929, 931 (Fla. 1st DCA 1986), a circuit court has "inherent and continuing jurisdiction to entertain matters pertaining to child custody and to enter any order appropriate to a child's welfare." See Simms v. State, Department of Health and Rehabilitative Services, 641 So.2d 957, 961 (Fla. 3d DCA 1994). The purpose of the challenged orders in this case was to allow the court to acquire information concerning the conditions at the shelter, so that it could properly fulfill its statutory obligation to ensure the safety of the children. The court had already acquired jurisdiction over both children both in dependency and delinquency proceedings. If the circuit judge were to find that conditions at the shelter were cause for concern, it might then impose a sentence or level of detention that would avoid the juveniles' confinement in the shelter.
The foundation relies heavily on State, Department of Health and Rehabilitative Services v. Schreiber, 561 So.2d 1236 (Fla. 4th DCA 1990), for the argument that the orders at issue were outside the trial court's jurisdiction. In Schreiber, an adult defendant was committed to South Florida State Hospital. Twice she escaped. The trial court sua sponte ordered HRS executives to show cause why they should not be held in contempt of court for failing to perform their duties, by permitting the defendant to escape. At the contempt hearing, the public defender obtained the court's permission to intervene on behalf of the defendant and all others similarly situated at the hospital. The purpose of the intervention was to establish a proceeding where the court could "make an inquiry into the conditions and quality of treatment" at the hospital. Id. at 1238. Because the public defender's client had escaped from the hospital, she was not available for consultation with the public defender, who did not have permission to act on her behalf. Id.
Schreiber is distinguishable from this case. First, Schreiber did not involve juvenile proceedings under Chapter 39, which grants the circuit judge greater control over custodial dispositions than are available to a judge in adult criminal proceedings. Second, by its orders in Schreiber, the trial court injected itself into the inner workings of a mental hospital by conducting a judicial inquiry into the conditions and quality of treatment; the court ordered that a certain level of security personnel be maintained and sought to control the circumstances under which HRS could place criminal court hold patients in the hospital. This case does not involve the trial court's attempt to micromanage the shelter; the purpose of the inquiry is to acquire information relevant to detention and custody issues in ongoing delinquency and dependency cases.
No provision of Chapter 409 or 415 precludes the type of inquiry at issue in this case. The department has "prime responsibility for strengthening and improving child abuse and neglect prevention and treatment efforts." § 415.509(1)(a)1, Fla. Stat. (1995). The statute's use of the adjective "prime" is significant. As the public defender points out in his response, "the power to protect children is not a power exclusively vested in one branch of government;" nothing in the statute gives the department exclusive authority over child abuse issues "so as to divest the circuit court of its jurisdiction and *574 authority to protect children whom the court has declared dependent or committed as delinquent or otherwise placed in the custody" of the department. Public Defender's Response to Petition at 8. In fact, section 415.509(1)(a)3, requires that the department, "[t]o the fullest extent possible, cooperate with and seek cooperation of ... courts" on child abuse and neglect issues. (Emphasis supplied). The law does not require a juvenile judge to turn a deaf ear to complaints about safety at a juvenile facility, thereby leaving all responsibility for such issues to a ponderous bureaucracy.
While the provisions of Chapter 415, Part II, and section 39.403 may ultimately lead to commencement of Chapter 39 proceedings, criminal proceedings, license revocation or termination of a contract authorized by section 39.001(2), these were not the goals of the court orders at issue here. In this case, the department and the court have overlapping and concurrent power over matters relating to dependency and delinquency proceedings. There is no violation of the separation of powers clause under Article II, Section 3 of the Florida Constitution. See Simms, 641 So.2d at 960-61.
Prohibition does not lie in this case because the orders at issue did not exceed the lower court's jurisdiction. See English v. McCrary, 348 So.2d 293 (Fla.1977); cf. Schreiber, 561 So.2d at 1241-42.
Migdal and the public defender were properly appointed to represent their clients pursuant to sections 27.51(1)(c), and 39.041, Florida Statutes (Supp.1996), and section 27.53, Florida Statutes (1995). The orders at issue authorized inquiries within the scope of their representation, such that quo warranto is not appropriate. Cf. State ex rel. Smith v. Brummer, 426 So.2d 532 (Fla.1982); Schreiber, 561 So.2d at 1242. Similarly, there has been nothing improper about the Juvenile Advocacy Project's involvement in the case as a guardian ad litem. See Department of Health and Rehabilitative Services v. B.J.M., 656 So.2d 906, 911 (Fla.1995); Fla.R.Juv.P. 8.215. Acting in the best interest of the child, a guardian ad litem may assume a broader role on behalf of a child than a public defender. See B.J.M., 656 So.2d at 911. As Judge Burk pointed out in his response to the petition, a guardian was especially apt in this case since the foundation operated the only shelter facility for delinquent and dependent children in Palm Beach County, which would suggest that "the interests of the children and that of DCF are not necessarily identical, in this situation." Judge Richard B. Burk's Response to Petition at 17.
Finally, we deny certiorari relief because we find no departure from the essential requirements of law which will materially injure the petitioner throughout the remainder of the proceedings, which cannot be remedied on direct appeal. See, e.g., Bared & Co. v. McGuire, 670 So.2d 153 (Fla. 4th DCA 1996). Although not ripe at this stage of the proceeding, to the extent that privacy rights may be implicated, we believe that the court can enter a protective order pursuant to section 415.51(2)(f), Florida Statutes (Supp.1996), to alleviate any constitutional or privacy issues that might arise. Also, in the spirit of cooperation contemplated by section 415.509(1)(a)3, Florida Statutes (1995), the trial court might also circumscribe the scope of discovery requests to the extent that they duplicate investigation already conducted by the department.
The petition for writs of prohibition, quo warranto, and certiorari is denied.[4]
STEVENSON and SHAHOOD, JJ., concur.
NOTE: SHAHOOD, J., did not participate in oral argument, but has had the opportunity to review the entire proceeding.
NOTES
[1] Section 39.01(64), Florida Statutes (Supp. 1996), defines a "shelter" as

[A] place for the temporary care of a child who is alleged to be or who has been found to be dependent, a child from a family in need of services, or a child in need of services, pending court disposition before or after adjudication or after execution of a court order.
[2] Statutory exceptions to the general rule regarding the length of time a court retains jurisdiction are contained in sections 39.058 and 39.0581, Florida Statutes (Supp.1996), pertaining to serious or habitual juvenile offenders and maximum-risk residential programs. See § 39.022(4)(a), Fla. Stat. (1995).
[3] See State, Department of Juvenile Justice v. E.W., 704 So.2d 1148 (Fla. 4th DCA 1998); Department of Health and Rehabilitative Services v. State, 616 So.2d 91, 92 (Fla. 5th DCA 1993); State ex rel. Department of Health and Rehabilitative Services v. Nourse, 437 So.2d 221 (Fla. 4th DCA 1983).
[4] Although we were advised at oral argument that the case may now be moot, we have issued this opinion because of its effect upon the administration of the juvenile justice system and on similar cases. See Nourse, 437 So.2d 221.