721 So.2d 414 (1998)
A.G. natural father of C.G., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 98-1440.
District Court of Appeal of Florida, Fourth District.
November 25, 1998.
Rehearing Denied December 2, 1998.
A.G., Sunrise, pro se.
No appearance for appellee.
KLEIN, Judge.
This is a pro se appeal by A.G. from an order reinstating protective supervision over his daughter C.G., as well as ordering her to be examined by a psychologist. We reverse the order reinstating protective supervision because it was done without notice and therefore constitutes a denial of due process, but affirm the psychological examination.
A.G. and the child's mother had one daughter, C.G. The mother had three other children. All four children were adjudicated dependent in November, 1994. C.G. has remained in her father's custody since the adjudication *415 of dependency. One of her half-sisters remains in the custody of her mother, and her other half-sister and a half-brother are in foster care. C.G. is five years old.
The court terminated protective supervision over C.G. but retained jurisdiction until she reached age eighteen in an order entered May 9, 1997, nunc pro tunc to March 31, 1997. The trial judge subsequently recused himself, and a new judge was assigned.
Although neither A.G. nor C.G. were involved in subsequent hearings regarding C.G.'s half-siblings, A.G. attended these hearings and filed pro se pleadings on behalf of himself and the mother, whom he could not represent because he was not a lawyer. The hearing culminating in the order which is on appeal involved one of C.G.'s half-sister's foster care placement. A.G. attended that hearing, and the newly assigned judge, who had obviously familiarized herself with A.G.'s past involvement, advised A.G. that she would not tolerate anyone engaging in the unlicensed practice of law. The court then stated:
THE COURT: ... I will not put up with right now what I seem to believe is nothing but games playing at the expense of the children.
I also want you to know that I'm concerned about the children that currently And my understanding is that there's been a termination of supervision of [C.G.]. That she resides with the father and there's been termination of supervision.
Is that correct?
MS. [sic] PERENY [Assistant Attorney General]: Yes, Your Honor.
THE COURT: If the games playing continues, I've got grave concerns about the safety and well-being of that child....
The court then stated that the hearing concerned two of C.G.'s half-siblings, not C.G., and advised A.G. that he had no standing and should move to the area of the court reserved for spectators.
After addressing matters not pertinent to this appeal, the court then considered a request by the half-sister's therapist that there be visitation between the half-sister and C.G. The therapist advised the court that A.G. objected to supervised visitation. A.G. then stated that the court did not have authority to order his daughter to submit to supervised visitation and that he wanted any visitation to be in a family environment which could be supervised either by him or the children's mother. A.G. explained:
I do not want it in any environment where she is going to be examined, looked at, notes made of her behavior, and possible recommendations on those behaviors thrown to this Court.
The mother's counsel advised the court that the mother also had concerns about supervised visitation because, unlike her other children, C.G. had not been adversely affected by all of the prior proceedings. The court then announced that she wanted C.G. evaluated to determine whether supervised visitation would be detrimental to C.G.
A.G. objected that the court did not have the authority to order a psychological evaluation for C.G. The court then stated that it was reopening the dependency and reinstating protective supervision of C.G.
At that point A.G. became quite upset, the court admonished him, and he apologized, asking to know the basis for the court's ruling. The court responded that it felt A.G. was in bad faith. The following exchange then occurred:
[A.G.]:Your Honor, does this Court feel that [C.G.] is at risk?
THE COURT:Right now I do, sir, watching your behavior, your anger, your demeanor, as well as everything else that I have observed and read in this file.
[A.G.]: Exactly what portion of my anger?
THE COURT: I am very concerned about this child's danger. Not to the level where I feel it is necessary to remove the child, but it certainly has risen to the level that it's necessary that I reopen the dependency in order to get a more accurate picture of her current functioning.
The court then entered an order reinstating protective supervision over C.G. The order noted that A.G. insisted on unsupervised visitation between C.G. and her half-sister, J.A., while the foster home organization in charge of the half-sister objected to J.A. *416 having unsupervised contact with A.G. The order went on to state:
b. [A.G.] has refused to allow [C.G.] to visit with [J.A.], notwithstanding that such visitation has been deemed therapeutic and necessary for [J.A.]. Visits in the past between the siblings have been reported to be highly enjoyable for each child. [A.G.] announced to this Court during the judicial review that it was upsetting to [C.G.] to visit with [J.A.] and that it was not in [C.G.'s] best interest to visit. He expressed concern about her psychological functioning as a result of this contact and opined that said contact would be injurious to [C.G.].
c. A confrontation ensued on March 19, 1998 in the waiting area of Judge Arthur M. Birken's chambers prior to a hearing in this cause. [J.A.] was present for the hearing with her AFC [Alternate Family Care] therapist and Ms. Steiner. [A.G.] approached the women and stated that [J.A.] would not be allowed to see her sister [C.G.], unless she saw her unsupervised with him or her mother. He told [J.A.] that he did not care about her, only about his daughter, and became very loud and aggressive. Sheriff's deputies had to be called to ask him to settle down. This incident was upsetting to [J.A.] and caused her to further be afraid of [A.G.].
d. [A.G.] expressed inappropriate anger and emotion before the undersigned judge during the judicial review hearing. He was unable to control his temper in the highly structured setting of the court room in the presence of the parties and court personnel. The Court is concerned about the safety and well being of [C.G.] given the level of anger, hostility and animosity directed at her half-sibling [J.A.] and therapeutic professionals. This Court is concerned that both [C.G.] and [J.A.] are pawns in a war of [A.G.'s] making that results in emotional and mental harm to both children. This "war" has been on going and unabated for five (5) years according to this Court's review of the Court file.
e. The Court does not, at this time, believe that [C.G.] should be removed from the home of [A.G.]; however, it is imperative that the situation be monitored by the Department of Children and Families and further investigated to determine if [C.G.] is in need of further services and intervention due to the inappropriate and dangerous actions of her father directed towards C.G.'s half-sister and treatment personnel.
When the court terminated supervision over C.G. on March 31, 1997, it retained jurisdiction over C.G. until she was eighteen or until further order of the court. We do not, therefore, agree with A.G.'s argument that dependency had been terminated. The argument which does concern us is whether the court could, without notice, reinstate protective supervision.
The Department has not filed a brief in support of the trial court's order. We have, however, reviewed Chapter 39, Florida Statutes, in order to determine whether there is any basis on which this order can be sustained. Although Chapter 39 and the Rules of Juvenile Procedure provide for protective supervision as one kind of placement, and also provide for termination of protective supervision, both are silent as to reinstatement of supervision where the child resides with the parent.
Section 39.41(2)(a)(9)a, Florida Statutes (1997), provides that when a child has been adjudicated dependent, the court having jurisdiction of the child has the power to:
Change the temporary legal custody or the conditions of protective supervision at a post disposition hearing subsequent to the initial detention hearing, without the necessity of another adjudicatory hearing. A child who has been placed in the child's own home under the protective supervision of an authorized agent of the department, in the home of a relative, in the home of a nonrelative, or in some other place may be brought before the court by the agent of the department who is supervising the placement or by any other interested person, upon the filing of a petition alleging a need for a change in the conditions of protective supervision or the placement. If the parents or other custodians deny the need for a change, the court shall hear all parties in person or by counsel, or *417 both. Upon the admission of a need for a change or after such hearing, the court shall enter an order changing the placement, modifying the conditions of protective supervision, or continuing the conditions of protective supervision as ordered. [emphasis added]
Our reading of the second sentence of the above statute is that where a child is in protective supervision, the court can only change the conditions of that supervision "upon the filing of a petition." If C.G. had been in protective supervision, it would thus have been necessary for a petition to have been filed for the court to have changed the conditions of that supervision. If a petition would have been necessary to change the conditions of supervision, it follows that a court could not, in the absence of a petition, institute protective supervision without notice.
Consistently, Florida Rule of Juvenile Procedure 8.345 provides:
(a) Motion for Modification of Placement. A child who has been placed in his or her own home, in the home of a relative, or in some other place, under the supervision of the Department ..., may be brought before the court by the parent, guardian, or any interested person on a motion for modification of placement. The court shall conduct a hearing and thereafter enter an order changing the placement, modifying the conditions of placement, continuing placement as previously ordered, or placing the child with the department or a licensed child-caring agency. [emphasis added]
Where a court adjudicates an issue that is not presented by the parties or the pleadings, it is a denial of due process. Cortina v. Cortina, 98 So.2d 334 (Fla.1957). The statute and rule thus serve the important purpose of ensuring that these proceedings comply with due process.
Although a "child's safety is a proper concern of the court at all stages of the court's jurisdiction," Henry & Rilla White Foundation, Inc. v. Migdal, 720 So.2d 568, 23 Fla.L. Weekly D2224 (Fla. 4th DCA 1998), there was no testimony at this hearing that C.G. was in any danger from her father or otherwise in need of protective supervision. When A.G. reminded the court that no one suggested that C.G. was at risk, the Department was noticeably silent, as it has been on this appeal.[1] Nor are we persuaded by the court's inclusion in her order of references to events which are not in the record or which occurred before she was assigned to the case. See Moore v. Dept. of Health and Rehabilitative Services, 664 So.2d 1137, 1139-1140 (Fla. 5th DCA 1995) (it was improper for trial court to include findings of fact based on what transpired at adjudicatory hearing where presiding judge was not even present at the adjudicatory hearing).
Our reversal in this case should not be interpreted to mean that a court cannot, on its own, take action to protect a child where the Department fails to act. See Interest of T.G.T., 433 So.2d 11 (Fla. 1st DCA 1983) (court may, on its own, initiate permanent commitment proceedings in a dependency proceeding if the parties receive proper notice); State, Dept. of Health and Rehabilitative Serv. v. Hollis, 439 So.2d 947 (Fla. 1st DCA 1983) (following T.G.T. and holding that circuit court may initiate permanent commitment proceeding without violating separation of powers clause); and Migdal, 720 So.2d 568, 23 Fla.L. Weekly D2224 (court can authorize lawyers representing children in Chapter 39 proceedings to investigate safety conditions at juvenile facility). If the court is acting on its own, a petition or motion by the court would not be necessary. Adequate notice and an evidentiary hearing are, so as not to violate due process.
We do not agree with A.G. that the court had no authority to order a psychological evaluation of C.G. Under section 39.41(2)(a)(1), Florida Statutes, once a child is adjudicated dependent, the court may require the parent and the child to "participate in treatment and services identified as necessary." Because C.G. had been adjudicated dependent and remains dependent until age *418 eighteen or order of the court, the court did have the authority under the statute to order the evaluation.
A.G. has also moved for review of the order denying his motion to be certified indigent for purposes of the appeal. That order must be reversed because it does not state the reasons for denial as is required by Florida Rule of Appellate Procedure 9.430. We have considered the other issues raised by A.G. and find them to be without merit.
Affirmed in part and reversed in part.
WARNER and POLEN, JJ., concur.
NOTES
[1] The Department's attorney did explain that reinstatement of supervision meant that someone from the Department would come to A.G.'s and C.G.'s home once a month to check on C.G.