STONE, C.J.
We reverse a final order holding the clerk of the court, Robert Lockwood, financially responsible for the cost of commercial storage of a truck. The vehicle was admitted into evidence years earlier in criminal proceedings which had remained pending before the court during an appeal and resentencing.
Prior to trial, the truck was stored at “Mae’s Towing” on order of the arresting authority. It was admitted into evidence at the trial in 1993 on the state’s motion. In the course of the trial, the state requested that it remain stored at Mac’s Towing throughout the trial and, if a conviction were obtained, until the court of appeals had ruled. The trial judge entered a written order that “state’s number 36 in evidence (Silverado truck/blue and white) ... be held at Mae’s Towing for storage only.”
Subsequently, the defendant’s conviction was upheld on appeal. In 1998, the state set a hearing to determine storage cost of evidence and gave a notice of the hearing, to be held the next day, to the in-house attorney for the clerk. At the hearing, employees of the clerk’s office were questioned. No written motion or pleading was ever filed. The state explained the purpose of the hearing to the trial court:
STATE: Basically the State Attorney’s Office became notified through conversations ... that there was [sic] some costs associated with the vehicle in evidence on another case.
*1282 [[Image here]]
Basically the issue is this. During the course of the ... trial, the vehicle that was involved ... was placed into evidence by the State. And I’ll admit candidly to the Court that that’s an unusual move.
[[Image here]]
And I did it for purposes of tactical reasons. I thought it was important for the jury to see it....
[[Image here]]
After the vehicle was entered into evidence, there was an off the record discussion. And I’m going to bring it up for purposes of context, but I’ll suggest to the Court that you don’t really need to know about this conversation to make your ruling, but I think it helps understand why certain things were done.
The conversation was off the record upstairs in the courtroom. And it was between the clerk, Joyce, myself, I believe that you were on the bench at the time, and there even might have been Deputy Babcock in the courtroom.
THE COURT: Who was the conversation between?
STATE: Basically between me and the clerk. And the conversation went as to where the vehicle was going — what we were going to do with the vehicle now that it was in evidence. And I turned to Joyce and I said, “Well, where can we keep the vehicle?”
And Joyce indicated we don’t have the ability to store that vehicle. We don’t have a place to keep it. So then I believe Detective Babcock indicated, right now it’s at [Mack’s] ...
And I said, “Oh, then why don’t we just continue to keep it there during the course of this trial and the pendency of the appeal.”
[[Image here]]
So the Court did an order — drew up an order that the vehicle be kept still at Mack’s for purposes of evidence.
The state went on to advise the trial judge that “the Clerk’s office does not feel it’s responsible to pay the bill associated with the storage of the vehicle....”
The in-court clerk who allegedly had the conversation with the prosecutor regarding where to keep the vehicle, advised the court that when she wrote the court’s order to keep the truck at Mac’s Towing, there had been no discussion as to the clerk’s possible financial responsibility for commercial storage, and if there had been, she would have notified the evidence custodian. The budget, director for the clerk stated that the clerk’s budget is funded line by line with no contingency funds for unbudgeted items and that all of the clerk’s funding comes from the county. He also said that the estimate for the cost of storing the vehicle at Mac’s is $50,000.
We recognize that a circuit court has the “inherent” power to enter orders reasonably necessary for the administration of justice within the scope of its jurisdiction. See generally Miami Herald Pub. Co. v. Collazo, 329 So.2d 333 (Fla. 3d DCA 1976). This authority has been held to extend to proceedings which assist the true owner to recover property under the court’s control without the necessity of a separate lawsuit. See Brown v. State, 613 So.2d 569, 570 (Fla. 2d DCA 1993). However, the inherent power of the criminal trial court to assist the true owner in recovery of property held in custodia legis is not without boundary. In Heinrich v. Johnson, 549 So.2d 1187 (Fla. 2d DCA 1989), the sheriff returned stolen property to the owner, but after criminal charges against the defendant were dismissed, the defendant moved for return of the property. The trial court ordered the sheriff to replace the seized property with “property of equal or similar nature to the property seized.” In reversing, the appellate court stated that the trial court had jurisdiction to order return of the property, but did not have jurisdiction to order replacement and to do so would “trans-forme ] a criminal proceeding into a civil one. This was improper since the proper civil procedure necessary to reach this stage was not followed." Heinrich, 549 So.2d at 1188. See also Butler v. State, 613 So.2d 1348 (Fla. *1283 2d DCA 1993)(where sheriff failed to comply with statutory requirements for disposing of seized property, owner’s damage claim must be litigated in “an original action pursuant to the rules of civil procedure”).
In Brown, the court questioned extension of the trial court’s jurisdiction beyond a determination of whether to return seized property, suggesting that absent an original action pursuant to the rules of civil procedure, the criminal trial court may not have jurisdiction to require the police department to return a car that it no longer possessed, or pay for damages if it were established that the car was lost or damaged through some fault of the department. Id. at 571. Similarly, here, we conclude that the judge in the criminal case did not have the authority to award storage costs against the clerk.
The state claims that the clerk waived the court’s lack of jurisdiction by appearing at the hearing without contesting that point. Cf. Cumberland Software, Inc. v. Great American Mortg. Corp., 507 So.2d 794 (Fla. 4th DCA 1987). However, subject matter jurisdiction, which we find the trial court exceeded in acting beyond its inherent jurisdiction in this case, cannot be waived. See generally State, Dep’t. of Health and Rehabilitative Servs. v. Schreiber, 561 So.2d 1236 (Fla. 4th DCA 1990).
Patently, there were no proceedings brought against the clerk. In Lovett v. Lovett, 93 Fla. 611, 112 So. 768 (1927), the supreme court determined:
The jurisdiction and power of the court remain at rest until called into action by some suitor; it cannot by its own action institute a proceeding sua sponte. The action of the court must be called into exercise by pleading and process, prescribed or recognized by law, procured or obtained by some suitor by filing a declaration, complaint, petition, cross-bill, or in some form requesting the exercise of the power of the court.
Id. See also Krivitsky v. Nye, 155 Fla. 45, 19 So.2d 563 (1944).
This case differs from those situations where a litigant consents to the trial court’s determination of a pending matter, and after receiving an unwelcome result, questions the trial court’s jurisdiction to decide the issue. Cf. Polyglycoat Corp. v. Hirsch Distributors, Inc., 442 So.2d 958 (Fla. 4th DCA 1983). Here, the order was entered in a criminal proceeding to which the clerk was not a party; the order did not relate to disposition of property to its rightful owner; there was no civil claim pending; there was no pleading notifying the clerk that it faced the prospect of such an order or judgment; and it did not involve a sanction to enforce a prior lawful order. Rather, the order imposed a civil obligation on the clerk to pay $50,000 to a non-party without a formal claim being made against the clerk. We note that neither Mac’s nor the county was involved in these proceedings, and any ultimate payment by the clerk pursuant to the order would, of necessity, fall on the unnoticed county. There was no case or controversy pending before the court on the issue decided. There was simply concern, on the part of the state attorney’s office, to ensure that it would not be required to bear the budgetary impact of what had occurred, the result of which was a final judgment which the trial court lacked jurisdiction to enter and which, therefore, must be reversed.
WARNER and GROSS, JJ., concur.