742 So.2d 401 (1999)
THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellant,
v.
I.C., a minor child, Appellee.
Nos. 99-206, 99-372.
District Court of Appeal of Florida, Fourth District.
September 1, 1999.
*402 Robert A. Butterworth, Attorney General, Tallahassee, and Charles M. Fahlbusch, Assistant Attorney General, Fort Lauderdale, for appellant.
Michael J. Dale, David S. Bazerman of Nova Civil Clinic, and Howard Talenfeld of Colodny, Fass & Talenfeld, P.A., Fort Lauderdale, for appellee.
Nancy W. Gregoire of Bunnell, Woulfe, Kirschbaum, Keller, Cohen & McIntyre, P.A., Fort Lauderdale, for the Honorable Ginger Lerner-Wren.
WARNER, C.J.
During a statutory review of a juvenile dependency case, the trial judge discovered that this juvenile as well as unknown others with disabilities who had been rejected from numerous placements were being brought to the first floor of the Department of Children & Family Services ("DCF") "assessment center" in Broward County for the afternoon, where care (of sorts) is provided when no other place is available to the children. Many of the children stay there until late in the night, while accommodations are sought for these troubled youths. Appalled at the lack of placement and supervision, the trial judge ordered DCF to produce the child resource records of all such children at the assessment center during the preceding seven days. In a later hearing, the judge ordered DCF to immediately terminate the practice of temporarily housing children at the assessment center while they await therapeutic placement. DCF appeals *403 both orders. We affirm the order insofar as it requires DCF to identify the children at the center, but reverse the requirement that DCF's records be produced. We also reverse the injunctive provisions of the order.
The child at issue, I.C., came into the system on August 6, 1998, after his mother could no longer cope with his multiple psychological and physical problems[1] and abandoned him to the State's care. At the time of the statutory review hearing on January 12, 1999, I.C., age 11, had been in fourteen to fifteen different foster homes since his entry into the system. While discussing I.C.'s placement, the trial judge's concern was heightened when DCF revealed that children such as I.C., who could not be placed, were being shuttled from place to place each night and/or housed in the DCF administrative staff offices during the day if they had been expelled from school and their foster parents were at work. If no housing was secured, the children could spend the night in a motel with a staff person. For these children there was no mental health treatment or medical services available at the center. At one of the several hearings held, during which no evidence was taken, DCF advised the court that the issue was not due to a funding problem but a lack of appropriate available placements for some of the children with disabilities.
The trial court was outraged by the number of children who might be subject to this practice, which the judge considered additionally abusive to the children, and to I.C. in particular. As a result, the trial court ordered DCF to provide I.C.'s newly appointed attorney ad litem with all of I.C.'s records. Additionally, the court ordered an evaluation of I.C. and that the child be placed in some therapeutic setting consistent with the care that he needed. The judge also ordered an accounting of all of the children at the assessment center for the past week, including their names, their diagnoses, and the length of time each had been in the system. The judge ordered DCF to produce this information at a hearing set for the following day.
At that hearing, DCF argued that the trial court lacked jurisdiction to consider children other than I.C. and that requiring DCF to provide the records of those other children would violate sections 39.202(1) & (2)(f), Florida Statutes (Supp. 1998), which prohibits disclosure of a child's resource records. The agency also expressed concern that the judge's order might violate the Florida Constitution's Separation of Powers clause, in that the judge was essentially investigating the agency's procedures.
The judge vociferously objected to the notion that any of her inquiries were beyond the court's jurisdiction. She was not launching an investigation of the entire foster care system. Rather, after hearing about children like I.C., she was concerned for the safety and welfare of the children before the court, which would include all of the children in the assessment center. Given her extreme concern for the children who were being housed at the DCF facility and "bounced" each night to a different placement, she denied the agency's request to reconsider the production of their records. However, she did modify the order to include only those children within her division. In addition, she entered a temporary injunction ordering DCF to cease and desist the practice of housing children with disabilities at the center. Specifically, her order states:
That the Department of Children and Families practice of placing children with disabilities, in the Court's jurisdiction who are awaiting a therapeutic placement in the assessment center's first floor administrative offices during the day to be supervised by staff where they are not receiving appropriate mental health treatment, services, supports *404 or education, and that the shuttling of these children from one home or foster home or placement to another at night in homes or placements which are inconsistent with the appropriate level of care as determined for each individual shall terminate immediately as it places the child at immediate risk of harm and endangers the safety, health and well being of the child/children in State care and custody.
DCF appeals both rulings.
In Henry & Rilla White Foundation, Inc. v. Migdal, 720 So.2d 568, 573-74 (Fla. 4th DCA 1998), our court noted that Chapter 39 provides a juvenile court judge with significant control over custodial dispositions and that:
the power to protect children is not a power exclusively vested in one branch of government; nothing in the statute gives the department exclusive authority over child abuse issues so as to divest the circuit court of its jurisdiction and authority to protect children whom the court has declared dependent or committed as delinquent or otherwise placed in the custody of the department.
However, the court has no general jurisdiction over DCF to monitor and evaluate its functioning. The court cannot "micro manage" a facility operated by DCF. Cf. Department of Health and Rehabilitative Servs. v. Schreiber, 561 So.2d 1236, 1241 (Fla. 4th DCA 1990). Nor can the court order DCF to provide specific treatment or placement of a child. See State, ex rel. Dep't of Health and Rehabilitative Servs. v. Nourse, 437 So.2d 221, 221 (Fla. 4th DCA 1983). All of these are executive agency decisions which implicate policy development and prioritizing of funding. These matters are not assigned to the judiciary to resolve. Nevertheless, the juvenile court can act to protect children within its jurisdiction. The question in this case is how that may be accomplished.
DCF argues that the trial court exceeded its jurisdiction by considering the cases of other children and ordering the production of their resource records in a statutory review hearing purportedly limited to issues relating to I.C. Production of juvenile records is prohibited except in limited circumstances. The applicable statute provides that such records may be produced as follows:
A court upon its finding that access to such records may be necessary for the determination of an issue before the court; however, such access shall be limited to inspection in camera, unless the court determines that public disclosure of the information contained therein is necessary for the resolution of an issue then pending before it.
§ 39.202(2)(f), Fla. Stat. (Supp.1998) (emphasis added). DCF contends that because the status of other children was not "before the court," the judge could not order production of those children's records.
We agree that technically in hearings related to I.C.'s status, the general condition of other children was not an issue before the court. The judge was not asking for the records because of any relation to I.C.'s case but was understandably concerned about the status of each of the children being shuffled back and forth to the assessment center. But, as the agency conceded at oral argument, the court would be entitled to obtain the names of the children within its division who were being temporarily housed at the center. Obtaining the names of the children assigned to the trial court's division would not violate the confidentiality requirements of the statute. Nevertheless, by demanding the production of those records in the instant case, the trial court went beyond the statutory limitations.
Once the court had the names of the children in its division being temporarily cared for at the assessment center, the court could have issued an order in each child's case requiring the production of the child's records in a judicial review pursuant *405 to section 39.453(1)(a), Florida Statutes (1997). Such review may be made as frequently as the court deems necessary or desirable. Therefore, the trial court had the authority to obtain the records in connection with a review of each individual child's case. Moreover, by limiting production of such records to proceedings involving the child's own case, inadvertent disclosure to unauthorized persons is prevented. In the instant case, a great concern of DCF was whether the records of the other children were required to be produced to the attorney ad litem for I.C., as the judge had so indicated at one hearing. During oral argument, however, both the attorney representing the judge and the attorney ad litem noted that the order did not require dissemination of the other children's records. In addition, the attorney ad litem conceded that he was not even entitled to view them. Since the statute provides that such production would be in camera, we interpret the judge's order as requiring only that. Thus, we affirm the order insofar as it requires the production of the names of all of the children at the assessment center. We reverse the order for production of those children's records in connection with I.C.'s case.
Given the judge's strong concerns for the safety and appropriate treatment of the children in her division and her desire to obtain immediate information about these children, we pause to observe that section 39.453(8)(g) states:
The court may issue a protective order in assistance, or as a condition, of any other order made under this part. In addition to the requirements included in the case plan, the protective order may set forth requirements relating to reasonable conditions of behavior to be observed for a specified period of time by a person or agency who is before the court; and such order may require any such person or agency to make periodic reports to the court containing such information as the court in its discretion may prescribe.

(Emphases added). While we could find no cases interpreting this section, it appears to give the court a broad power to obtain information regarding the children in its division, which would include the list of names of those held at the assessment center as was required in this case.
As to the injunction preventing children with disabilities in the judge's division from being held at the center, we reverse. By precluding any child with disabilities from being temporarily housed at the DCF facility and being shuttled to other placements, without regard to the particular facts of the child's case, the judge is interfering with the general operations of the agency. See State, ex rel. Dep't of Health and Rehabilitative Servs. v. Sepe, 291 So.2d 108, 109 (Fla. 3d DCA 1974), superseded by statute on other grounds as recognized in Dep't of Health and Rehabilitative Servs. v. Stoutamire, 602 So.2d 564 (Fla. 2d DCA 1992). In Rilla White Foundation, Inc., 720 So.2d at 573, we determined that the trial court had the authority to investigate whether placement at that facility might pose safety concerns for the particular dependent children whose cases were before the court. We also approved the following relief for this type of situation, "[i]f the circuit judge were to find that conditions at the shelter were cause for concern, it might then impose a sentence or level of detention that would avoid the juveniles' confinement in the shelter." Id. at 573. We did not hold that the court could shut down the shelter or prevent its use by the Department. Similarly, in the instant case the judge violated the Separation of Powers clause by precluding the use of the assessment center for any child with disabilities, regardless of that child's circumstances or the availability of other placements for the child. Moreover, where the trial court gave no notice to DCF that it would enter the injunction and took no evidence regarding the issue, relying instead on *406 knowledge acquired from sources outside of this record, we conclude that the injunction cannot be sustained and is a violation of due process. See A.G. v. Department of Children and Families, 721 So.2d 414, 417 (Fla. 4th DCA 1998).
We acknowledge the significant burdens placed on both DCF and the courts in trying to deal with the ever increasing problems of juveniles brought before them, both in dependency and delinquency matters. The general public is hardly aware of the horrendous number of abused and abandoned children, and the difficult case-loads of both the case workers and the courts in juvenile proceedings. The trial courts often are not alerted to the difficulties of the child in dependency proceedings until the situation for the child is intolerable, and drastic action may be called for. What would help considerably is if each child could have a guardian ad litem or attorney ad litem who could be in contact with the child on a more regular basis and serve as the child's advocate. Parents are represented in these proceedings, but the child, the alleged object of everyone's concern, has no voice and no capacity to reach the court in many cases. We commend the bar volunteer projects such as Lawyers for the Children of America, for their representation of dependent children.
For the foregoing reasons, we affirm that part of the order requiring the agency to produce the names of children at the assessment center. We reverse the production of records and the entry of the injunction against the Department.
STONE and POLEN, JJ., concur.
NOTES
[1] I.C. suffers from encopresis, a bowel disorder, along with oppositional defiant disorder and has been rejected from ten different placements in therapeutic settings.